**LAURENTIDE FINANCE CORPORATION OF AMERICA, Appellant,**

v.

**CAPITOL PRODUCTS CORPORATION.**

**No. 16773.**

United States Court of Appeals Third Circuit.

Argued Dec. 21, 1967.

Decided April 8, 1968.

John B. Pearson, Bailey & Pearson, Harrisburg, Pa., for appellant.

Arthur Berman, Berman & Boswell, Harrisburg, Pa., for appellee.

Before BIGGS, McLAUGHLIN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The appellant, Laurentide Finance Corporation of America, appeals from an order of the District Court for the Middle District of Pennsylvania dismissing the appellant's amended complaint. Jurisdic-

tion is based on diversity of citizenship. 28 U.S.C.A. § 1332.

The salient facts are as follows. In December of 1961, John Reber Baking Corporation desired to purchase a large "tunnel" oven, a product manufactured by the defendant-appellee, Capitol Products Corporation. Reber arranged with Amacorp, a finance company, to have the latter purchase the oven from Capitol and then "lease" the oven to Reber, the "rental" payments to result eventually in Reber owning the oven outright. The basis of the dispute presented here is a guaranty agreement that Capitol signed in favor of Amacorp,[1] which provides as follows:

"To: Amacorp Industrial Leasing Co., Inc.

"In consideration for your entering into Lease G–3–1352, dated January 15, 1962, by your company, as Lessor, and John Reber Baking Corporation, as Lessee, a copy of said Lease being attached hereto and made a part hereof, the undersigned, Capitol Products Corporation, hereby guarantees the payment by Lessee of the monthly rentals, in accordance with the terms of said Lease, and, in event of such default by Lessee, agrees to pay, but only to the maximum extent of, an amount equal to the unamortized invoice value of equipment of our manufacture included in said Lease based on our contract price of $143,838.00 to John Reber Baking Corporation.

"This obligation upon the undersigned company will be assumed upon demand, except that it is agreed:

"1. After written notice to the undersigned given immediately after the default, the undersigned shall have the right to notify you that it desires a grace period of one hundred eighty days or six months after such written notice of default during which time the undersigned shall have the right to

---

1. For all pertinent purposes, appellant Laurentide stands in the shoes of Amacorp in this litigation, as the lease entered into between Reber and Amacorp was assigned by Amacorp to Laurentide.

cure the default and if during said period of time the default is cured, by whomever, then you shall not have the right to accelerate the outstanding unpaid balance but the contract shall continue as theretofore; and

"2. All equipment included in said master Lease will be treated by you as a unit and preserved intact during said grace period with respect to its repossession, distribution, sale or lease to others in the event of default by John Reber Baking Corporation, to allow the undersigned and the guarantors of the other equipment included in said master Lease to locate and secure a suitable purchaser or lessee acceptable to you without removal of any equipment from the described location.

"The 'unamortized invoice value' shall mean the contract price of $143,-838.00 reduced by an amount equal to $\frac{1}{65}$ thereof for each month's rental paid by or on behalf of John Reber Baking Corporation to Amacorp Industrial Leasing Co., Inc., the Lessor.

"Notwithstanding anything to the contrary herein stated, if any, there shall be no obligation on the undersigned unless and until your company delivers to the undersigned f. o. b. the plant of John Reber Baking Corporation, free and clear of all taxes, liens and encumbrances, in as good condition as when sold, ordinary wear and tear alone excepted, all of the said equipment of our manufacture originally sold to you and described on Schedule A attached hereto.

"The liability of the undersigned hereunder shall not be modified in any manner whatsoever by any extension that may be granted to Lessee by any court in any proceedings under the bankruptcy act, or any amendments thereto, or to any state or other federal statutes, the undersigned expressly waiving the benefits of any such extension.

"The undersigned hereby waives notice of the acceptance of this guaranty. By the acceptance of this Guaranty Agreement Lessor agrees that it will not without the consent of the undersigned compound, compromise and/or adjust its claims against Lessee or grant extension or any other indulgences to Lessee.

"This Agreement shall terminate with the initial term of said Lease.

"In Witness Whereof, the undersigned has executed this Guaranty Agreement this 15th day of December, 1961.

"Capitol Products Corporation
"By L. C. Milliken,
 *"President.*

"Accepted this 29 day of January, 1962
"Amacorp Industrial Leasing Co., Inc.
"By G. M. Andersen,
 *"President."*

On January 15, 1962, Reber executed the lease and paid the first and last four installments of rent. It also paid the eleven installments due during the balance of 1962 and a portion of the rent due January 15, 1963. However, on January 22, 1963, Reber filed in the United States District Court for the Southern District of New York a petition for an arrangement with its creditors under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. After the petition for an arrangement was filed, Amacorp subordinated its claims on the lease to Morris Silverman in consideration of the latter supplying the funds necessary to an attempt to rehabilitate Reber. Amacorp also consented to a Lease Modification Agreement which would put a moratorium on rental payments for a period of time, lower the monthly rental, extend the term of the lease and waive all past defaults by Reber. This arrangement with the stated agreements was confirmed by the referee in July, 1964. The attempted rehabilitation of Reber failed and Silverman sold the oven and Amacorp's assignee Laurentide brought the present suit against Capitol to recover upon the guaranty agreement.

Capitol contends that it has no liability on the guaranty agreement since the appellant has breached that agreement by: (1) failing to give written notice to Capitol of default of rental payment by Reber immediately upon such default; (2) adjusting and extending, contrary to the guarantee agreement, its claims against Reber; and (3) failing to deliver the oven to Capitol f. o. b. the plant of Reber, free and clear of all taxes, liens and encumbrances, in good condition, all the foregoing being a condition precedent to any liability of Capitol.

Because we agree with the district court that, in the circumstances at bar, Capitol's liability was conditioned on the return of the oven, we need not rule on the other issues raised by appellant.

As noted previously in this opinion, the guaranty agreement between Capitol and Amacorp provided as follows:

"Notwithstanding anything to the contrary herein stated, if any, there shall be no obligation on the undersigned [Capitol] unless and until your company [Amacorp] delivers to the undersigned f. o. b. the plant of John Reber Baking Corporation, free and clear of all taxes, liens and encumbrances, in as good condition as when sold, ordinary wear and tear alone excepted, all of the said equipment of our manufacture originally sold to you. * * * "

 Laurentide concedes that taken literally the language quoted above would deny it recovery in the case at bar. It points, however, to the language of the paragraph of the guaranty agreement immediately following that quoted above,

which provides: "The liability of the undersigned [Capitol] hereunder shall not be modified whatsoever by any extension that may be granted to Lessee [Reber] by any court in any proceedings under the bankruptcy act, or any amendments thereto, * * * the undersigned expressly waiving the benefits of any such extension." Laurentide argues that this latter paragraph must be read as a limitation on the former to give any meaning to the phrase "the undersigned expressly waiving the benefits of any such extension". Laurentide contends that Capitol would not be waiving any "benefit" if the contract requirement conditioning Capitol's liability on return of the oven was not subject to an exception when return is made impossible by an arrangement under the Bankruptcy Act.[2] We cannot agree. If we give meaning to every provision in the guaranty agreement, as we must if possible, Best v. Realty Management Corp., 174 Pa.Super. 326, 329, 101 A.2d 438, 439 (1953), both of the quoted provisions expose a consistent allocation of risk between the parties. If any extension should be granted Reber by Amacorp, Capitol, by the established law of suretyship would be relieved of any liability.[3] Capitol waived this right in the event such an extension was granted by a court under the Bankruptcy Act. In such circumstances, Capitol would continue to be liable on its guaranty agreement although its risk would be increased. However, Capitol limited its risk to such extensions. Capitol's contract with Amacorp demanded, in any event, that when Amacorp would look to Capitol on the guaranty agreement, although the latter could not deny liability

2. We do not have to, and shall not, reach or decide the issue of whether reference to the "bankruptcy" act was intended to include proceedings under a Chapter XI reorganization.

3. Henderson's Admr. v. Ardery's Admrs., 36 Pa. 449 (1860). It has been indicated, however, that the rule does not apply in favor of a compensated corporate surety and such companies have been held entitled to release only in the case of either material variance or actual prejudice. City of Philadelphia v. Fidelity & Deposit Co., 231 Pa. 208, 211–212, 80 A. 62, 63 (1911). We need not decide whether Capitol is a compensated surety in the circumstances at bar since there can be no dispute that in any event a material variance is present. See American Surety Co. v. Greek Catholic Union, 284 U.S. 563, 567–569, 52 S.Ct. 235, 76 L.Ed. 490 (1932). Cf. Restatement of the Law of Security, § 134.

**448**

on the grounds of the bankruptcy extension, a condition precedent to recovery on the agreement was the return of the oven. To put it simply, Capitol agreed to take the risk of an extension granted to Reber under the Bankruptcy Act, but conditioned its liability on that risk to the return of the oven. The oven was not returned and therefore the court below properly dismissed the complaint.

Accordingly, the judgment of the court below will be affirmed.