# Miller *v.* Commercial Electric Construction, Inc. (et al., Appellant).

Argued September 12, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Fredric C. Jacobs,* with him *E. Jerome Brose,* and *Brose, Poswistilo, LaBarr & Jacobs,* for appellant.

*Edward C. McCardle,* with him *King, McCardle,* for appellee.

OPINION BY HOFFMAN, J., November 16, 1972:

This appeal involves the question of whether an individual employee may recover sums claimed for labor supplied or performed from a surety when the compensation for such labor is calculated, in part, upon a percentage of the profits of the employer rather than paid on a weekly, monthly, or other basis.

This case is before us upon the appeal of appellant, United States Fidelity & Guaranty Company (hereinafter "U.S.F. & G."), from an order of the court below denying its motion for judgment n.o.v. and for a new trial. The pleadings and testimony in the case establish that on or about May 13, 1966, Franklin O. Miller (hereinafter "Miller") and Commercial Electric Construction, Inc. (hereinafter "Commercial"), entered into a contract of employment through an exchange of letters whereby Miller was hired to "develop, operate and control all electrical work in the Allentown area." His compensation was based on a salary of $250 per week plus "one-half of the profits of all work secured in the Allentown area." U.S.F. & G. and Commercial admitted that "plaintiff performed labor in the supervision of the said electrical construction contract." U.S.F. & G.'s bond contained the customary language that if Commercial paid "all sums of money which may be due for all materials furnished, *labor supplied or performed, . . . in or in connection with the prosecution of the work . . ."* (emphasis added), then the obligation would be null and void, otherwise to remain in full force and effect.

The jury accepted plaintiff's evidence that the profit on the Bethlehem Housing Authority project, which contract for the construction of electrical work had been secured by Miller for Commercial, was $36,545.45. The jury returned a verdict against both Commercial and U.S.F. & G. in the amount of $18,014, or slightly less than one-half of the profits from the project.

It is basic that the obligations of a surety under a bond cannot be extended beyond the plain import of the words used. Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning. *Peter J. Mascaro Co. v. Milonas,* 401 Pa. 632, 635, 166 A. 2d 15 (1960).

The surety agreement between Commercial and U.S.F. & G. was entered into in accordance with the dictates of the Act of May 28, 1937, P. L. 955, §11, as amended, 35 P.S. 1551. In addition to containing language substantially similar to that included in the surety agreement the Act further provides: "Such provision shall be deemed to be included for the benefit of every person, . . . who as subcontractor or otherwise, has furnished material, supplied or performed labor, rented equipment or services in or in connection with the prosecution of the work. . . ."

This Commonwealth has long recognized that compensation in the form of profits is within the contemplation of labor and materialmen's bonds. In *Philadelphia v. Pierson,* 217 Pa. 193, 196-97 (1907), our Supreme Court permitted recovery of the contract price, which included a profit for the subcontractor, and the claim of the surety that recovery be limited to the value of the materials and labor was rejected. The Court stated: "The obligation of the Trust Company was not to pay for labor and materials furnished according to their market value any more than it was Pierson's. The

latter's obligation was to pay 'any and all persons, any and all sum or sums of money which may be due for labor and materials furnished,' etc. Pierson could not have been heard to say in defense of the action that the contract price exceeded the market value of the labor and materials employed, for what was due to the plaintiff, and therefore recoverable, was such sum as he had agreed to pay for the ceiling. No more could the Trust Company, for the obligation was the same with respect to each." See also, *H. F. Watson Co., Inc. v. Christ,* 62 Pa. 604 (1916); *Right Lumber Co. v. Kretchmar,* 200 Pa. Superior Ct. 335, 189 A. 2d 302 (1963).

Appellant cites a number of cases for the proposition that recovery on a surety bond should be denied for profit as compensation for work done. A review of those cases reveals that they are inapposite to the case before us. As Judge SCHEIRER, writing for the lower court perceptively noted: "Those cases in which a plaintiff is seeking lost profit for work not done because of a breach of contract by the principal in a surety bond are not precedent in our situation which involves profit as compensation for work done."[1]

---

[1] As set forth in 17 Am. Jr. 2d, Contractors' Bonds, Section 134: "Ordinarily, however, loss of profits by a subcontractor or materialman resulting from the refusal of the principal contractor to permit a subcontractor fully to perform the latter's subcontract, or from the principal contractor's failure or refusal to accept the materials which he contracted to purchase, are not recoverable from the surety on the bond; and particularly is this true in jurisdictions in which the bond of public contractors is regarded merely as a substitute for a mechanics' lien law protecting subcontractors and materialmen of private contractors. *On the other hand, where the contract of the subcontractor or of the materialman is fully performed and nothing remains but the payment of the contract price or the balance due thereon, the recovery of profits from the surety is not to be denied merely because it is profit rather than value of labor or materials furnished.*" (Emphasis added)

The real issue before us involves a question we have not, heretofore, directly decided. While appellant's contention that profits are not a valid means of recovery under a surety bond is wholly insupportable under our own case law as well as that of the majority of jurisdictions, the trial judge had to deal with the rather novel contention that a surety is not responsible for profits for work already entered into or done prior to the surety agreement. The trial judge ably responded to this contention, when he said: "Fidelity (U.S.F. & G.) contends that plaintiff's sharing of profits was contingent upon his securing the construction job and that this was accomplished prior to the execution of the bond, therefore, the sum claimed was not 'labor supplied or performed' in the prosecution of the bonded work. This argument is too restrictive of either the contract or the evidence adduced. Plaintiff was hired 'to develop, operate and control' all electrical work in the Allentown area. Commercial's offer of employment included the following, 'You will set up a field organization and office when necessary to successfully *operate all work in this area.*' Fidelity and Commercial admitted that 'plaintiff performed labor in the supervision of the said electrical construction contract.' Fidelity's version that plaintiff was to have one-half of the profits of any job 'generated by him' and that $250 weekly was his compensation for work done, is not borne out in the record. Plaintiff's services were to be compensated by a salary *and* a share of the profits on work secured by him. The compensation was not divided as to services; the two methods of payment were for services performed. As we will note later, plaintiff allocated figures to the Housing Authority job and thus brought himself within the terms of the bond. Plaintiff's right to one-half of the profits did not accrue to

him merely for securing the job; it was part and parcel of the total compensation for prosecuting the work."

We are also mindful of the fact that a corporate surety in business for profit is not a favorite of the law and surety contracts such as the one in the instant case are to be liberally construed in favor of laborers and materialmen. *Pennsylvania Supply Co. v. National Casualty Co.,* 152 Pa. Superior Ct. 217, 31 A. 2d 453 (1943); 10 Appleman, Insurance Law and Practice, Section 5857, 5889 (1943).

Inherent in appellant's disagreement with the lower court proceedings is the contention that the admission of parol evidence was a violation of the parol evidence rule. The position taken by appellant is entirely inconsistent with its averments in new matter, which stated that the contract between appellee and Commercial was "too vague and indefinite to permit enforcement against a surety". By such averments, U.S.F. & G. acknowledged ambiguity in the contract. Clearly, the law is that where a written contract is ambiguous, oral evidence is admissible to explain the contract and to resolve the ambiguity. *Fischer & Porter Co. v. Porter,* 364 Pa. 495, 72 A. 2d 98 (1950). We are of the opinion that parol evidence was properly admitted, and the jury having reasonably adopted plaintiff's interpretation and figures substantiating "profit", those findings of fact are conclusive.

Viewing the contractual relationship of the parties as a whole, it is clear that the appellee's performance was not merely to secure work but rather to secure work and to do all things necessary in the prosecution of the work to assure that the job was completed and a profit was made for Commercial. The record discloses that it was obviously the intent of the contracting parties to compensate appellee on the basis of 50% of the profits secured by him, and that this compensa-

tion was for the entire performance of "labor supplied or performed" and not merely the securing of the work.

We see no reason why a surety should not be bound to pay for contemplated expenses and services simply because the work, or a part thereof, was accomplished prior to the bond agreement. As Commercial benefited from appellee's efforts, and as the contract was fully performed without any breach of contract, we believe that the surety is responsible for the compensation agreed upon between the contracting parties.

We believe the trial judge acted properly during the course of the proceedings, and rightfully denied U.S.F. & G's post-trial motions.[2]

We, therefore, affirm the order and judgment of the lower court.

DISSENTING OPINION BY PACKEL, J.:

This appeal involves the liability of a surety on a payment bond for an obligation of the contractor to pay one of its employees one-half of its profits on a public housing project. The employee's contract, providing for services to be performed on various jobs, called for a salary of $250 per week, which he was paid, and 50% of the profits of the employer on any job secured by the employee, which profits he was not paid. The record shows that the employee's services in connection with the housing project amounted to some 17 weeks out of his 108 weeks of employment. The jury found that 50% of the profits of the employer on the housing project, which was the only job secured by the employee, was $19,956.20. Hence, judgment in that

---

[2] As the evidence clearly disclosed that there was a complete absence of joint control and that the contracting parties were in the relationship of employer to employee, denial of recovery on the basis of a finding of joint venture would have been improper.

amount was entered for the employee and against the employer and the surety.

The surety seeks reversal on the grounds that: (1) the parol evidence rule barred oral testimony that profits were to be computed on each job secured by the employee; (2) the employee was a joint venturer and, therefore, not entitled to recover on the bond; (3) a share of profits of a contractor are not recoverable against a surety on a payment bond; and (4) payment for services performed prior to the prosecution of bonded work is not recoverable from the surety.

First, the writings between the employee and employer were ambiguous, so that the court below properly admitted oral evidence. Restatement of Contracts §§231, 238. Second, recovery against a surety on a payment bond will be denied to a joint venturer. *United States v. Grubb*, 358 F. 2d 508 (9th Cir. 1966). *But see St. Paul-Mercury Indemnity Co. v. United States*, 238 F. 2d 917 (10th Cir. 1956). In this case, however, the determination that the employee was not a joint venturer was correct because of the absence of joint control. *McRoberts v. Phelps*, 391 Pa. 591, 138 A. 2d 439 (1958). Third, although profits that might have accrued, but for a breach of contract, are unliquidated and not recoverable against a surety, the rule is otherwise as to the recovery of profits on a completed transaction.[1]

The fourth issue requires an analysis of underlying considerations with respect to payment bonds. Security for laborers and materialmen existed in the private

---

[1] For a clarification of the distinction see *Price v. H. L. Coble Constr. Co.*, 317 F. 2d 312 (5th Cir. 1963). The cases allowing recovery of profits deal with profits of the supplier of services or of materials but no case has been found that deals with a claim against a surety for a substantial portion of the contractor's profits.

sector by virtue of the right to obtain a lien. The unavailability of that remedy in the public sector led to statutes mandating that contracts for public projects must be accompanied by surety bonds for the protection of laborers and materialmen in carrying out the work.[2] Recovery on such bonds by persons supplying services or materials is as a grantee of a statutory right or as a third party beneficiary under the law of contracts.[3] The cases call for liberality of construction. *United States v. Carter,* 353 U.S. 210 (1957) (health and welfare fund obligations to trustees for employees are recoverable from surety). Nonetheless, the payment bond should not be construed to permit recovery beyond what was reasonably intended by the parties or mandated by the statute.[4]

Payment bonds are executed and delivered at or shortly after the execution of the principal contract for the construction work. Their purpose is to give protection to those who thereafter provide services or materials in connection with the prosecution of the work. The very words of the bond and the statute refer to "in connection with the prosecution of the work." Thus, the Court in *Commonwealth to use v. R. L. Bonham Co.,* 297 Pa. 514, 518, 147 A. 611, 612 (1929) pointed out:

---

[2] In this case the pertinent statute is the Housing Authorities Law, Act of May 28, 1937, P. L. 955, §11, as amended, 35 P.S. §1551. For statutory variations, see Note, 80 U. Pa. L. Rev. 572 (1932). Effective January 20, 1968, the pertinent statute is the Public Works Contractors' Bond Law of 1967, Act of December 20, 1967, P. L. 869, §1 et seq., 8 P.S. §191 et seq. For federal public works, the pertinent statute is the Miller Act, 40 U.S.C.A. §270a, or for housing projects the National Housing Act, 42 U.S.C.A. §1594.

[3] Restatement, Security §165.

[4] The extent of the right of recovery is measured by the contract terms under which the services or materials were supplied, absent collusion. *Philadelphia to use v. Pierson,* 217 Pa. 193, 66 A. 321 (1907) ; *United States v. Greene Elec. Serv. of Long Island, Inc.,* 379 F. 2d 207 (2d Cir. 1967).

"A surety is not liable on the bond unless it appears the unpaid work was done pursuant to the contract the bond purports to cover. Where suit is instituted on a bond in connection with public work, by a subcontractor or materialman, while the contract of the latter with the general contractor may be material as showing the relation of the subcontractor or materialman to the particular job, the principal contract between the obligors and the obligee named in the bond must be the instrument on which liability is predicated." In *Philadelphia to use v. Neill,* 206 Pa. 333, 334, 55 A. 1032, 1033 (1903), the Court allowed recovery for bricks used for a paving contract, even though the arrangements for purchasing the brick had been made prior to the principal contract, because, as the Court pointed out: "Though the price was agreed upon in advance, the sale was not made until after the contract."

The employee's contract in the instant case called for services to be performed before and after the prosecution of the work on the housing project, and in addition, he was to work on other jobs of the employer. As already indicated his work on the housing project was for some 17 weeks out of a total of 108 weeks. It is interesting to note *Tioga County Commissioners to use v. C. Davis, Inc.,* 439 Pa. 285, 266 A. 2d 749 (1970), where no recovery was permitted against the surety for repairs to equipment which was used for the bonded work only 18 days out of 76 days.

A significant fact here is the jury's determination that the employee's right to a share of the profits was because he secured the principal contract. His entitlement to the portion of profits was predicated upon him securing business. Yet, the securing of the business by the preparation of the bid and other preliminary work had to precede the actual execution and delivery of the principal contract and the payment bond. Mani-

festly, services performed in obtaining a building contract are not services performed in prosecuting the work to be done under that contract.

The court below took the view that some of the services of the employee were furnished in connection with the prosecution of the actual work on the housing project. That work was no different from his work performed on other projects for which he received the salary of $250 per week. His right to a share of the profits, however, was directly attributable to his services in securing the business.[5] Such services added nothing that could reasonably said to be for the benefit of the public project and, hence, are not an obligation of the surety on the payment bond.

In situations not expressly covered by the statute or by the bond, notwithstanding the liberality of construction against a paid surety, it is nonetheless important to determine what the parties reasonably intended. Judge WATERS pointed this out in an opinion denying recovery against a surety for damages due to a delay in construction, part of which opinion is quoted in *Van Cor, Inc. v. American Casualty Co.*, 417 Pa. 408, 414, 208 A. 2d 267, 270 (1965) as follows: " 'Despite the apparently increasing liberal policy in this respect, and even though a corporate surety in business for profit is not a "favorite of the law," Pennsylvania Supply Co. v. National Casualty Co., supra, I cannot bring myself to the conclusion that the parties to the contract and bond in suit intended to make [Van Cor] a third-party beneficiary entitled to recover for delay damages

---

[5] In this respect, the case differs from *United Pacific Ins. Co. v. United States*, 296 F. 2d 160 (8th Cir. 1961), where recovery was sought for payments, part of which was for rentals of equipment and part of which was for an option to buy the equipment. The court held that only a proportionate part of the payment was recoverable from the surety.

such as here involved.' " Under the circumstances of this case, the parties could not have reasonably intended that the surety should be liable to the employee for 50% of the employer's profits on the housing project.

The judgment against the appellant should be reversed.

SPAULDING and CERCONE, JJ., join in this dissenting opinion.