CRAFTMARK HOMES, INC.

v.

NANTICOKE CONSTRUCTION COMPANY.

Appeal of FIRST PENNSYLVANIA BANK.

No. 75–1200.

United States Court of Appeals, Third Circuit.

Argued Sept. 16, 1975.

Decided Dec. 1, 1975.

Leonard J. Bucki, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellant.

Charles A. Shaffer, Flanagan, Doran, Biscontini & Shaffer, Wilkes-Barre, Pa., for appellee.

Before SEITZ, Chief Judge, and RO-SENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

First Pennsylvania Bank ("Bank") appeals from a judgment in the amount of $56,074 entered against it and in favor of Craftmark Homes, Inc., ("Craftmark") on the Bank's guarantee of payments due Craftmark under a construction contract. We conclude that the district judge interpreted the contract erroneously and reverse.

This diversity action has its origins in a construction contract entered into between Nanticoke Construction Company ("Nanticoke") as general contractor and Craftmark as subcontractor. Craftmark was engaged in the construction of panelized housing material. It contracted to supply Nanticoke with all necessary labor, materials, and equipment required for the erection of a 108-unit housing project in Nanticoke, Pennsylvania. The Bank became involved in this project in two ways. First, it was the construction lender. Second, in consideration of Craftmark's paying it a fee of one percent of the contract price, the Bank guaranteed payment of the contract price to Craftmark by Nanticoke.

Work on the project eventually led to a dispute between the principals, and on February 14, 1974, Craftmark instituted this action against Nanticoke, seeking payment for labor and materials delivered. Nanticoke answered that it did not owe Craftmark any money and counterclaimed for $15,000 against Craftmark for work not done or unsatisfactorily performed. On June 28, 1974, Craftmark amended its complaint to join the Bank as a defendant under the guarantee. The Bank's answer denied liability, alleging that Craftmark had failed (1) to perform satisfactorily under the contract, as the guarantee required, and (2) to submit executed payment vouchers required by the guarantee.

Several weeks prior to the scheduled trial date, counsel for Craftmark and Nanticoke, without notice to the Bank, stipulated to the entry of judgment against Nanticoke in the amount of $56,-074. The stipulation was reduced to judgment on October 23, 1974.

Craftmark's case against the Bank was tried to the court. The trial consisted of testimony from a single witness, Robert R. Majewski, former Director of Design and Engineering for Craftmark. Majewski, a licensed architect, testified that Craftmark had fully and satisfactorily performed under its contract with Nanticoke and was owed the amount of $56,074. On cross-examination, he stated that all materials were delivered and labor completed before March 24, 1974, the date Nanticoke filed its counterclaim.

The critical issue before the trial court, and the only issue on this appeal, is the effect of Craftmark's failure to submit the required vouchers. The salient language of the guarantee agreement is as follows:

> Payment shall be made by the Bank on satisfactory performance . . . upon vouchers properly signed by the General Contractor to the order of said Sub-Contractor with FHA Form No. 2403—Application for Insurance of Advance of Mortgage Proceeds attached. These vouchers shall constitute evidence of performance and delivery and acceptance thereof, it being understood that such payment is subject to the Bank's inspection and approval of the labor performed and the materials and arrangements for storage, the inspection to be performed within three days after receipt of the voucher. Provided, however, that upon failure of the sub-Contractor to perform satisfactorily the labor and supply all of the materials herein contemplated, this guarantee shall become null and void and the Bank shall be relieved of the conditions and obligations herein stated.

It was not disputed that the vouchers referred to in the guarantee were not

submitted to the Bank, and no reason was offered for the failure.[1]

■ The defendant has contended that under the guarantee agreement the vouchers are a condition precedent to payment.[2] Plaintiff has argued that the Bank's only concern was whether the work was satisfactorily performed and that a proper interpretation of the guarantee is that the vouchers are merely evidentiary and not a condition precedent to payment. Thus, in plaintiff's view, once it. was established through Majewski that the labor was satisfactorily performed and the materials delivered and stored, the Bank must pay.

The district court agreed with the plaintiff. It held that the submission of the vouchers "is not a condition precedent to recovery under the Cash Guarantee. The Guarantee does not explicitly require their submission as a condition precedent and the Court declines to infer such a condition." The district court did not offer a rationale for its decision but it did cite *Miller v. Commercial Electric Construction, Inc.,* 223 Pa.Super. 216, 297 A.2d 487 (1972), and *First National Bank of E. Conemaugh v. Davies,* 315 Pa. 59, 172 A. 296 (1934).

■ We see little of relevance to the issue before us in either of the foregoing cases. *First National* offers the general rule of construction that when a party is interested in the transaction leading up to the suretyship contract, its words in the contract must be construed strictly against it. *Miller* involved the liability of a surety on a payment bond for an obligation of a contractor to pay one of its employees one-half of its profits on a public housing project. The opinion contains a statement that "a corporate surety in business for profit is not a favorite of the law and surety contracts . . . are to be liberally construed in favor of laborers and materialmen." 297 A.2d at 489. Craftmark, however, as a corporate subcontractor, is not in the same position as are the employees in *Miller.* Furthermore, the statements in both cases are rules of construction applicable only when the language of the contract is not explicit.

In our view, however, the contract, read as a whole contains no ambiguity. The schema of the agreement is twofold: the Bank is required to pay (1) "on satisfactory performance," and (2) "upon vouchers properly signed" with Federal Housing Administration (FHA) Form No. 2403 attached. The plain meaning of these words is that receipt of the vouchers is a condition precedent to payment. While the agreement provides that the vouchers "shall constitute evidence of performance and delivery and acceptance thereof," it specifically reserves the right of the bank to inspect within three days after the receipt of the vouchers. Thus, notwithstanding receipt of the voucher, if inspection revealed failure of performance, the guarantee would "become null and void."

Furthermore, the requirement that the voucher be properly signed and delivered was at no time waived by performance because the voucher was an indispensable requirement for the insurance of the mortgage proceeds. FHA Form 2403 requires a certification by the mort-

---

1. At oral argument counsel for plaintiff was asked why, when Craftmark and Nanticoke had stipulated to a judgment, Nanticoke had not simply signed the vouchers. Counsel responded that Nanticoke did sign but the vouchers also required the signature of the owner of the project, and that the owner was at odds with Nanticoke and would not sign.

2. The parties have assumed that Pennsylvania law applies to this case. In this diversity action, the applicable law is the law, including the choice of law rules, of the forum state.

*Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania courts apply the law of the place where a contract is made and where it is to be performed. *In Re Estate of Danz,* 444 Pa. 411, 283 A.2d 282 (1971); *Formigli Corporation v. Alcar Builders, Inc.,* 329 F.2d 79 (3d Cir. 1974). Thus, here, Pennsylvania substantive law governs the interpretation of the guarantee agreement.

gagee that the sum requested for payment "is now payable" and informs the FHA that the foregoing sum will be advanced from the mortgage proceeds subject to prior FHA approval. It requests the FHA to "issue a certificate approving the amount of such advance for mortgage insurance." The same form provides on its face for certification by the FHA to the mortgagee approving the mortgage insurance. The form also provides for request by the mortgagor to the mortgagee for payment to the contractor and certification by the mortgagor "that all prior work and the work, labor and materials to be paid for under this Request are satisfactory and are in accordance with the contract drawings." A similar certification is provided in the form for the architect. It is self-evident from an examination of the form that it is necessary for the Bank, as both guarantor and mortgagor, to ensure that any advances made to a subcontractor qualify for FHA insurance.[3]

The voucher is not, as the dissent argues, merely notice to the bank "that Craftmark has performed to the general contractor's satisfaction." Contrary to the dissent's suggestion, the bank is prejudiced by the absence of the voucher, because the attached Form 2403 is an essential requirement for insurance of advance of mortgage proceeds. The dissent further suggests that there is nothing to prevent the bank from instituting an action to obtain the necessary signatures on a form. However, the bank has no relationship with the general contractor or the owner and it should be the responsibility of the subcontractor to comply with its obligation under the guarantee agreement to provide the signatures.

Furthermore, the dissent apparently isolates the last sentence of the guarantee from the preceding language and concludes from this sentence that the only expressed condition precedent in the guarantee was satisfactory performance. It disregards the very principle it in-

veighs—that meaning must be given to every part of the contract. *Laurentide Finance Corp. of America v. Capitol Products Corp.,* 392 F.2d 444, 447 (3d Cir. 1968).

The effect of the district court's decision and the result urged by the dissent would be to oblige the Bank to pay without receiving its bargained-for assurance that the owner or architect concurred in the existence of the obligation or that the insurance on the advance of proceeds would be forthcoming. Even though a corporate surety in business for profit may not be a favorite of the law, *Miller v. Commercial Elec. Const. Inc., supra,* 297 A.2d at 489, it "is basic that the obligations of a surety under a bond cannot be extended beyond the plain import of the words used. Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning." *Id.* at 488, *citing Peter J. Mascaro Co. v. Milonas,* 401 Pa. 632, 166 A.2d 15 (1960).

Plaintiff has attempted to bring this case within the facts of *Warner Co. v. North City Trust Co.,* 311 Pa. 1, 166 A. 230 (1933), wherein the defendant resisted payment under a guarantee of a construction contract on the ground that required vouchers had not been submitted. The court rejected that defense because the general contractor had arbitrarily refused to furnish the vouchers and because the general contractor had admitted the amount claimed to be due, which admission was "equivalent to the production of the vouchers." The case is inapposite because Craftmark has not demonstrated whether the necessary documents were not signed for substantive or merely arbitrary reasons. Furthermore, in view of the importance of FHA Form 2403, *supra,* there is here no submission "equivalent to the production of the vouchers."

The judgment of the district court will be reversed and the district court is directed to enter judgment in favor of the defendant.

---

3. *See* 24 C.F.R. §§ 205.70, 205.80.

794

GARTH, Circuit Judge (dissenting):

I respectfully dissent because, like the district court, I believe that submission of vouchers signed by the general contractor, with FHA Form 2403 attached, is not a condition precedent to recovery by Craftmark under the terms of its guarantee.

In construing this guarantee, as with any contract, the intent of the parties as ascertained from the entire agreement is controlling. *Land Title Bank & Trust Co. v. Baron,* 341 Pa. 241, 19 A.2d 62 (1941). The court cannot under the guise of interpretation create obligations not imposed by the plain meaning of the terms of the guarantee. *Miller v. Commercial Electric Construction, Inc.,* 223 Pa.Super. 216, 297 A.2d 487 (1972). But neither can it construe acts not expressly made conditions precedent as such, unless this clearly appears to be the intent of the parties. *Sharp v. McKelvey,* 196 Pa.Super. 138, 172 A.2d 580, 583 (1961). Moreover, under Pennsylvania law, which is controlling, any doubt as to the meaning of the guarantee must be resolved against the compensated surety, without regard to whether the beneficiary is an individual or a corporation. *Monongahela Street Ry. Co., v. Philadelphia Co.,* 350 Pa. 603, 39 A.2d 909 (1944); *Miller v. Commercial Electric Construction, Inc., supra.*

Viewing the guarantee in its entirety, I conclude that the guarantor's overriding concern was not with the furnishing of vouchers but rather with obtaining full performance, and its intent was to make this, and only this, a condition precedent to recovery. As noted in the majority opinion, the guarantee provides in pertinent part:

Payment shall be made by the Bank on satisfactory performance [of labor and on delivery and storage of the materials under arrangements satisfactory to the Bank] (including the schedule or time of delivery) upon vouchers properly signed by the General Contractor to the order of the said Sub-Contractor with FHA Form No. 2403 —Application for Insurance of Advance of Mortgage Proceeds attached. These vouchers shall constitute evidence of performance and delivery and acceptance thereof, it being understood that such payment is subject to the Bank's inspection and approval of the labor performed and the materials and arrangements for storage, the inspection to be performed within three days after receipt of the voucher. Provided, however, that upon failure of the sub-Contractor to perform satisfactorily the labor and supply all of the materials herein contemplated, this guarantee shall become null and void and the Bank shall be relieved of the conditions and obligations herein stated.

As I read the language of the guarantee that "these vouchers shall constitute evidence of performance" I can find no intent to make their submission a condition precedent to recovery. Rather, the vouchers serve to notify the Bank that Craftmark has performed to the general contractor's satisfaction. Here, the Bank received notice of Craftmark's claimed performance when Craftmark made its demand for payment under the guarantee.[1] The Bank could have inspected the work performed at that time but chose not to do so. In any event the Bank does not and cannot claim prejudice on this score, for the district court found that Craftmark *had* performed satisfactorily.

My view of the "voucher submission" requirement is substantiated by what I regard as a logical and reasonable reading of the guarantee. The last sentence of the guarantee provides that "upon failure of the sub-Contractor to perform satisfactorily . . . this guarantee shall become null and void." This provision in my opinion creates the only express condition precedent to be found in the guarantee—a condition precedent of satisfactory performance. The majority, however, contends that the first sentence

1. Comprehensive Statement of Uncontested Facts 11; App. at 45a, 51a.

of the guarantee creates a condition precedent by requiring "payment . . *on* satisfactory performance . . . *upon* vouchers signed properly by the General Contractor . . . ." (Emphasis added.) If in fact the first sentence of the guarantee creates a condition precedent as the majority urges, then the final sentence of the guarantee which requires the sub-contractor to "perform satisfactorily" would be wholly unnecessary and meaningless. If we are to give meaning to every part of this contract, as we must to the extent possible, *Best v. Realty Management Corp.*, 174 Pa.Super. 326, 101 A.2d 438 (1953), I must then conclude that it was not the intent of the parties that the first sentence of the guarantee constitute a condition precedent to payment.

Moreover, the evidence in the record is to the effect that there was full and satisfactory performance by Craftmark, and the court below so found.[2] Craftmark's Director of Design and Engineering testified at trial that the contract had been fully performed,[3] and Craftmark introduced into evidence the invoices on which its claim against the general contractor was based, which showed full performance.[4] The Bank could have introduced evidence of deficient performance but it did not. The district court's finding is binding on this court, since it is not "completely devoid of minimum evidentiary support displaying some hue of credibility." *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972). Under these circumstances I cannot hold the submission of vouchers to be a condition precedent to recovery absent a clear expression of intent to produce this result.

Nor does the nature of the FHA Form 2403—Application for Insurance of Advance of Mortgage Proceeds, compel a contrary result, since there is no evidence that the Bank was prejudiced by the absence of this form. There is nothing in the record which indicates that the FHA may not respond to the Bank even without the formalities of a completed Form 2403, under the present circumstances. Nor is there anything to prevent the Bank from instituting an action to obtain the necessary signatures on the form if in fact it is required by .the FHA.

Accordingly, the Bank as author of the guarantee form having failed to provide for its own protection in explicit unequivocal terms, as it could have, cannot now complain that the protection it desires but did not afford, is unavailable. I would affirm the order of the district court.

2. District Court Opinion, Finding of Fact 28, App. at 153a.

3. App. at 77a, 78a.

4. Exhibits P–2 to P–9, App. at 127a–134a.