**PREFERRED FIRE PROTECTION, INC., Appellant**

v.

**JOSEPH DAVIS, INC., and Liberty Mutual Insurance Company, Appellees.**

Superior Court of Pennsylvania.

Argued March 18, 2008.
Filed July 23, 2008.

Jeffrey T. Morris, Pittsburgh, for appellant.

Brian J. Beadley, Pittsburgh, for appellee.

BEFORE: BENDER, BOWES and TAMILIA, JJ.

OPINION BY BOWES, J.:

¶ 1 Preferred Fire Protection, Inc. ("Preferred") appeals from the August 8, 2006 order granting the motion for summary judgment in favor of Liberty Mutual

Insurance Company ("Liberty"), the commercial surety that posted a Labor and Materialmen's Payment Bond ("Bond") on behalf of Joseph Davis, Inc. ("JDI"), the general contractor, in connection with a contract between Preferred and JDI for the installation of a fire protection sprinkler system for a parking garage project. We reverse and remand.

¶ 2 The trial court provided the following factual and procedural history in this matter:

The case was commenced by Preferred filing a complaint against Joseph Davis, Inc. (hereinafter "JDI") alleging breach of contract, and Liberty, as it had posted a Labor and Materialmen's Payment Bond (hereinafter "Bond") on behalf of JDI. Preferred entered into a sub-contract with JDI on February 9, 2001, pursuant to which Preferred agreed to install a fire protection [sprinkler] system in the Northshore parking garage (hereinafter "parking garage") located in the Northside area of Pittsburgh, Pennsylvania. JDI entered into a prime contract with the owner of the parking garage, the Sports and Exhibition Authority of Pittsburgh and Allegheny County (hereinafter "SEAP"). Under the terms of its agreement, JDI obtained a payment bond from Liberty. Thereafter, by way of a subcontract order, hereinafter referred to as "purchase order" dated February 9, 2001, Preferred agreed to be the subcontractor for JDI and furnish labor, materials, equipment and design drawings to install a sprinkler system in the parking garage as a subcontractor to JDI for a total cost of $79,500. Simultaneously, with the execution of the purchase order, Preferred and JDI entered into a construction contract (hereinafter "subcontract") which incorporated the purchase order and delineated the terms and conditions of the agreement.

Prior to the commencement of work on the parking garage and sprinkler system, Preferred was required to, and did obtain a sprinkler permit from the City of Pittsburgh Bureau of Building Inspection. Both the application and the sprinkler permit specifically indicate that the location of Preferred's work would be on the ground through the eighth floor of the parking garage. It also clearly indicated on the sprinkler permit that Preferred was responsible for scheduling a final inspection by the Bureau of Building Inspection and failure to do so could result in a substantial fine.

Based on the payment application that was submitted by Preferred to JDI on March 15, 2001, Preferred commenced work on the parking garage's sprinkler system on about February 2001, and had completed its scope of work under the subcontract at the time the payment application was submitted. Specifically, this payment application included payment in full for the amount of the original contract sum of $79,500 and one change order. On March 27, 2001, Preferred submitted another payment request to JDI requesting payment for change orders numbers 2–5. Preferred's own documentation establishes that [another change order] was discovered on September 21, 2001, six months after submitting its initial payment application. Preferred then submitted a second payment application solely requesting payment on change orders numbers 2–6 in the amount of $36,433.90. Once again this payment application clearly indicates that Preferred had completed its initial scope of work under the subcontract and work relevant to change orders 1–6 and was entitled to be paid in full by JDI prior to or at that time. Moreover, it is impor-

tant to note that all of the change orders were requested by Preferred through the period of March 15, 2001 through April 3, 2001. On October 16, 2001, Preferred finally received a partial payment from JDI in the amount of $71,550. Apparently this payment was only for the original contract sum and did not account for any change order work that the Preferred had requested to be paid for, which totaled $43,093. On May 14, 2002, Preferred then submitted a statement to JDI that reflected the October 16, 2001 payment and requested payment for the unpaid change orders. On February [28], 2003, Preferred sent a letter to Liberty stating that the substantiated date of completion of the project was October 4, 2001. The complaint was then filed May 18, 2004.

Liberty brought a Motion for Summary Judgment alleging that Preferred's complaint against Liberty was time barred and should be dismissed with prejudice as a matter of law. We agreed and entered our Order on August 8, 2006[, granting summary judgment in favor of Liberty]. Neither party appealed our Order at that time. On February 16, 2007, a praecipe for default judgment as to JDI was filed. On March 21, 2007, [Preferred] filed their Notice of Appeal.

Trial Court Opinion, 6/21/07, at 1–3.

¶3 In holding that Preferred's action against Liberty was time-barred, the trial court relied on Section 194 of the Public Works Contractors' Bond Law ("Bond Law"), 8 P.S. § 194(a),[1] and our Supreme Court's decision in *Centre Concrete Co. v. AGI, Inc.*, 522 Pa. 27, 559 A.2d 516, 518 (1989), which held that the aggrieved party "had one year from the expiration of the statutory ninety day waiting period to bring suit" on the payment of the bond claim. The trial court noted that Preferred alleged "that the cause of action accrued on June 18, 2003, when it contends it last performed work when the sprinkler system was re-tested and re-inspected." Trial Court Opinion, *supra* at 5. The court, however, concluded that pertinent documentation, including Preferred's February 28, 2003 letter to Liberty, indicated that the date of substantial completion was October 4, 2001, and that "the need for re-testing was a result of the delay in renting the adjoining space and had nothing to do with Preferred performing any type of work." *Id.* at 6. The court held, "Preferred's cause of action accrued on or before October 4, 2001, when the work was substantially completed" and accordingly, must have been filed on or before January 4, 2003. *Id.* at 5–6. As Preferred initiated this lawsuit on May 18, 2004, the trial court granted summary judgment in favor of Liberty.

¶4 On appeal, Preferred raises the following two issues:

1. Section 194(a) states:

   (a) Subject to the provisions of subsection (b) hereof, any claimant who has performed labor or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given pursuant to the provisions of subsection (a) of section 3 of this act or for which other financial security has been given pursuant to subsection (a) of section 3.1 of this act, and who has not been paid in full therefore **before the expiration of ninety**

   **days after the day on which such claimant performed the last of such labor or furnished the last of such materials for which he claims payments,** may bring an action on such payment bond or other financial security in his own name, in assumpsit, to recover any amount due him for such labor or material, and may prosecute such action to final judgment and have execution on the judgment.

   8 P.S. § 194(a) (emphasis added) (footnotes omitted).

1. Did the trial court err by entering summary judgment in favor of Liberty Mutual Insurance Company ("Liberty Mutual"), despite the presence of genuine material issues of disputed fact concerning the date on which work was completed by appellant on the bonded construction project for purposes of the limitation of actions provision contained in the liberty mutual payment bond?

2. Did the trial court err by failing to construe the limitation of actions provision contained in the Liberty Mutual payment bond most strongly against Liberty Mutual as a contract surety in the business of providing such bonds for compensation?

Preferred's brief at 4.

¶ 5 Our review focuses on whether the trial court properly granted summary judgment, and our standard is well-settled.

Summary judgment is properly entered where the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.1–.5; *Cosmas v. Bloomingdales Bros., Inc.*, 442 Pa.Super. 476, 660 A.2d 83 (1995). The trial court must examine the record in the light most favorable to the nonmoving party and resolve all doubts against the moving party. *Aetna Casualty and Surety Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94 (1994). The burden is on the moving party to prove that no genuine issue of fact exists. *Accu–Weather v. Prospect Communications*, 435 Pa.Super. 93, 644 A.2d 1251 (1994). However, when the moving party carries its initial burden, the adverse party may not rest upon the allegations or denials contained in the pleadings, but must respond by showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment will be entered in favor of the moving party. *Ertel v. Patriot–News Co.*, 544 Pa. 93, 674 A.2d 1038 (1996). Finally, in considering the trial court's ruling, we are not bound by the court's conclusions of law, but may draw our own inferences and reach our own conclusions. *Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646 (1995).

*Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1035–36 (Pa.Super.1999). Since summary judgment is unavailable where a material issue of fact remains, we begin our discussion by setting forth the parties' positions so that we can elucidate the existence of a critical factual dispute.

¶ 6 Preferred's argument is based on its assertion that a genuine issue of material fact existed regarding the date upon which Preferred actually completed the project. Preferred relies on the deposition testimony of William J. Sinagra, a City of Pittsburgh fire inspector, to support its contention that its employee did in fact perform "work" at the time of the re-inspection on June 18, 2003,[2] thereby setting that date as

---

2. Preferred quotes the following testimony given by Mr. Sinagra during his deposition in response to questions posed by the attorney representing Liberty:

BY MS. WALLS:

Q. Did Preferred Fire do any work on the sprinkler system when you inspected the garage in June of 2003?

A. What Preferred does is they have to actually turn that valve handle to let that air out and then that trips that system and then when everything passes, they have to take the valve cover off, reset the system, recharge the system, so if you wanted to—you know, that's working on it.

To me, working on a system means something went wrong so they're going to repair it, but to you it may mean as soon as they put their hands on it to do something they're working on the system.

the starting point to calculate the ninety-day statutory time-ban that delays the commencement of the one-year statute of limitation. In emphasizing the significance of the work performed, Preferred notes, "[H]ad the fire alarm and sprinkler system not passed inspection, an occupancy permit would not have been issued for the Parking Garage." Preferred's brief at 7. While Preferred acknowledges that a prior inspection had occurred, it argues that "where a contractor is summoned back to the job by a contracting body to make repairs or adjustments after the ostensible date of completion, and where such work is substantial and is not a sham or device employed to extend the period of limitations, the limitations period does not begin to run until the completion of the work performed upon the demand of the contracting body." *Id.* at 14–15 (citing *Valley Forge Indus., Inc. v. Armand Constr., Inc.*, 38 Pa.Cmwlth. 603, 394 A.2d 677, 678–79 (1978) (*"Valley Forge II "*)).[3]

¶ 7 Liberty counters that Preferred's cause of action accrued on or before October 4, 2001, "the date of completion" that "Preferred unequivocally admitted [to] in writing." Liberty's brief at 12–13. That writing is a letter sent by Preferred to Liberty on February 28, 2003, expressly stating:

> According to our records the substantial date of completion is October 4, 2001 that was signed off by the City of Pittsburgh–Department of Fire's Inspector Norm McDowell. In-fact Inspector

McDowell would be willing to testify on our behalf as such. Preferred Fire Protection contacted you on September 27, 2002 which would be under the one-year date to commence any action on the Payment Bond.

Preferred's letter, 2/28/03. Further, Liberty argues that the *Valley Forge II* decision relied on by Preferred is distinguishable because in that case, the subcontractor was called back by the contracting body to correct defects in the work as originally completed, which was not the situation here. Liberty alleges that Preferred did not perform additional work nor make any type of repairs as was done in *Valley Forge II*; "[r]ather, the only reason Preferred was contacted at that time was because the Inspector was simply taking care of outstanding permits that were in the files he inherited from a former Inspector...." Liberty's brief at 14.

¶ 8 Preferred notes that Liberty explicitly used the phrase "final completion" in the language of the Bond, rather than "substantial completion," the wording of the letter. It asserts that final completion did not transpire until after the second fire inspection, and the meaning of final completion must be ascertained by employing the plain meaning of the terms. Notably, the pertinent Bond language provides:

> It is likewise understood and agreed that no such suit shall be commenced prior to ninety (90) days from the date upon which the said person, partnership,

---

Deposition of William J. Sinagra, 2/22/06, at 37. In contrast, the trial court relied on Mr. Sinagra's response to Ms. Walls's following question:

Q. Okay.
The only issue in 2003 was for you to come out and, basically, just verify that the alarm system worked and then tie it in with the sprinkler system?
A. Yes.

*Id.* at 12.

**3.** We note that in *Valley Forge Indus., Inc. v. Armand Constr., Inc.*, 248 Pa.Super. 53, 374 A.2d 1312 (1977) (*"Valley Forge I "*), this Court elected to transfer the appellant's action on a construction project to the jurisdiction of the Commonwealth Court rather than exercise its discretionary power to hear the appeal. *See id.* at 1316.

association, or corporation furnished, leased, rented, rendered services, supplied or performed the last of the material or labor for which said claim is made; and every such suit shall be commenced not later than one (1) year from the date of **Final Completion of the work** under the said contract.

Labor and Materialmen's Payment Bond, 6/16/00, at 1–2 (emphasis added). Moreover, Preferred posits that notwithstanding the language in the Bond Law[4] specifying the "last worked" date, Liberty as the surety may specify a longer period of coverage than provided for by the Bond Law. Preferred's brief at 18 (citing *Redevelopment Authority of the City of Philadelphia v. Fidelity and Deposit Co. of Maryland,* 665 F.2d 470 (3d Cir.1981)) (wherein a limitation period explicitly set forth in the language of a payment bond prevailed over one established in the general Pennsylvania statute).

¶ 9 Preferred proposes that bond provisions should be construed most strongly against the surety, *i.e.,* to the extent that any ambiguity exists, they "are to be liberally construed in favor of laborers and materialmen." *Id.* at 18 (citing *Miller v. Commercial Elec. Constr., Inc.,* 223 Pa.Super. 216, 297 A.2d 487, 489 (1972)). Preferred underscores the distinction between "final completion" and "substantial completion" and cites 62 Pa.C.S. § 3902, which defines "substantial completion" in connection with contracts for public works as follows:

> Construction that is sufficiently completed in accordance with the contract and certified by the architect or engineer of the government agency, as modified by change orders agreed to by the parties, so that the project can be used, occupied or operated for its intended use. In no event shall a project be certified as sub-

stantially complete until at least 90% of the work on the project is complete. 62 Pa.C.S. § 3902. Preferred further relies on *Liazis v. Kosta, Inc.,* 421 Pa.Super. 502, 618 A.2d 450, 455 (1992), for the proposition that " '[s]ubstantial completion' is analogous to 'substantial performance,' under which a party is deemed to have performed a contract despite some 'technical, inadvertent or unimportant omissions.' " Preferred's brief at 19. Notwithstanding Preferred's letter indicating the date of substantial completion, Preferred reasons that the "final completion" language found in the Bond controls and hence, should be construed in its favor, not in Liberty's favor.

¶ 10 Liberty responds to this series of arguments by alleging that the phrase "final completion" refers to Preferred's completion of the work, rather than completion of the project. Therefore, "In this case, there is simply no difference between the terms substantial completion and final completion." Liberty's brief at 15. In dismissing the relevant importance of applying such "labels" and the implication of any corresponding ambiguity, Liberty indubitably avers, "[T]he facts are undisputed that the **work** was **completed**" on October 4, 2001. *Id.* 15–16 (emphasis in original). We cannot agree with this assertion.

¶ 11 Viewing the record in the light most favorable to the non-moving party, as we must, we conclude that a genuine issue of fact exists as to whether Preferred performed work after being recalled for the second, mandatory fire inspection on June 18, 2003. Preferred stated in writing, "According to our records the **substantial date of completion** is October 4, 2001 that was signed off by the City of Pittsburgh—Department of Fire's

4. *See* n. 1, *supra.*

Inspector Norm McDowell." Preferred's letter, *supra* (emphasis added). Based on the evidence of record, the substantial date of completion occurred sometime on or before October 4, 2001, when Preferred admitted as much and expected to be paid.

¶ 12 On March 28, 2001, Inspector Norman McDowell performed a preliminary inspection of the sprinkler system in the North Shore parking garage and noted that the system functioned according to the requisite specifications; he also determined, however, that further testing would be necessary when the fire alarms were connected. Sinagra deposition, *supra* at 15. At that time, the inspector did not "pass" the building's fire alarm system for all intents and purposes, as an occupancy permit could not yet be issued. *Id.* at 30–32. Consequently, a Preferred employee was required when then-Inspector Sinagra conducted a second inspection to ensure the proper functioning of the sprinkler and alarm systems. *Id.* at 27–28.

██ ¶ 13 The pertinent payment bond language herein unambiguously provides that "every suit shall be commenced not later than one (1) year from the date of **Final Completion** of the work under the said contract." Payment Bond, *supra* at 2. It does not suggest that "substantial" completion is the triggering event. Our Supreme Court has stated,

> "A bond given pursuant to a contract incorporated in the bond, will be construed in the light of the terms of the contract and the attendant circumstances, but 'the obligation of a bond cannot be extended beyond the plain import of the words used'...." Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning.

*Peter J. Mascaro Co. v. Milonas,* 401 Pa. 632, 166 A.2d 15, 17 (1960) (quoting *Commonwealth, to Use of Pennsylvania Mfrs.' Ass'n Cas. Ins. Co. v. Fidelity & Deposit Co. of Maryland,* 355 Pa. 434, 50 A.2d 211, 212 (1947)). In evaluating whether Preferred's claim is time-barred by the applicable statute of limitations, the pivotal point of contention thus concerns the date of final completion of Preferred's work under the contract.

██ ¶ 14 The Public Works Contractors' Bond Law serves two main purposes: (1) "it is designed to protect the contracting body by assuring faithful performance of the contract"; and (2) "[it] provides a substitute remedy for subcontractors who supply labor and materials and who are excluded from the protections afforded by the Mechanics' Lien Law of 1963." *Valley Forge I, supra* at 1315. The law must be liberally construed to effectuate its protections. *See Valley Forge II, supra* at 678. Section 194 of the statute governs actions on payment bonds and provides that a claim may not be instituted "before the expiration of ninety days after the day on which such claimant performed the last of such labor or furnished the last of such materials for which he claims payments." 8 P.S. § 194(a). Furthermore, under Pennsylvania law, the applicable one-year statute of limitations commences upon the expiration of that statutory ninety-day waiting period. *See Centre Concrete Co., supra* at 518 (construing 42 Pa.C.S. § 5523(3) in harmony with 42 Pa.C.S. § 5502(a)).

¶ 15 There is little guidance as to the statutory meaning of performing "the last of such labor" due to the dearth of Pennsylvania decisional law on point. The interpretation afforded that phrase is an important consideration in the instant matter, particularly when construed in light of the pertinent Bond language not-

ed above. In *Valley Forge II, supra*, the Commonwealth Court interpreted the operative language broadly and ruled that the limitations period did not begin to run until after the completion of repair work performed upon the demand of the contracting party to correct defects in the work originally completed. *Id.* at 679. In other words, the repair work was deemed substantial and not merely a sham or device employed by the appellant to extend the period of limitation. *Id.*

¶16 Where actions must be brought within statutory time limitations based upon the completion of work, other jurisdictions have concluded that completion can be construed as either actual or substantial completion, depending upon the attendant circumstances. *See Smith v. Minneapolis–Honeywell Regulator Co.*, 236 F.2d 573 (10th Cir.1956) (noting that while parties could agree to a stipulated date of completion, the statute contemplates actual completion, and "they were not free to contract in derogation of the rights of third parties for the protection of whom the statute was enacted and the bond executed"); *see also Hensel Phelps Constr. Co. v. General Signal Corp.*, 460 F.2d 109 (10th Cir.1972) (remaining items of work required for completion if the general contractor was to recover the full contract price, while of small value relative to the total contract, were not insubstantial, and therefore, the cause of action did not accrue until those items were completed); *General Electric Co. v. Webco Constr. Co.*, 433 P.2d 760 (Colo.1967) (remaining "miscellaneous item[s] of patches of plaster, of painting and minor touch-up work" to be performed in a school facility already in use were of minor consequence in determining completion for purposes of the statute of limitations).

¶17 In the case *sub judice*, the date of final completion simply cannot be determined without ascertaining whether Preferred performed work essential to the terms of the contract on the date of the sprinkler system's second inspection. Liberty argues that "final completion" refers to final completion of the work, not of the project, and that the date of substantial completion and final completion of the work coincide in this case, occurring sometime in 2001. Preferred counters that if it had not performed work during the second inspection on June 18, 2003, as it was obligated to do, an occupancy permit could not have been issued. Moreover, it suggests that if the sprinkler system had failed inspection, its obligations under the contract would have continued. Indeed, Mr. Sinagra testified that the satisfactory inspections of both the sprinkler system and fire alarm system were necessary preconditions to obtaining an occupancy permit. Sinagra deposition, *supra* at 30. Mr. Sinagra further testified to his opinion of what constitutes "working on the system." *Id.* at 37. His testimony regarding this factual dispute, however, cannot be deemed conclusive. Finally, the record does not disclose that this material issue of fact can be decided as a matter of law. In such circumstances, the matter properly rests with the fact-finders. Accordingly, we reverse the order granting summary judgment to Liberty.

¶18 Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

¶19 Judge BENDER files a Dissenting Opinion.

DISSENTING OPINION BY BENDER, J.:

¶1 Because I am not persuaded that a genuine material fact is at issue, I must respectfully dissent. Specifically, I am not convinced by Preferred's argument that the June 18, 2003 date rather than the

October 4, 2001 date is the appropriate date from which to establish the running of the statute of limitations Rather, I note that the language of the Bond Law, quoted by the Majority, and the language of the Bond itself, which tracts the Bond Law's language, speak in terms of the performance of the last of the labor or the furnishing of the last of the material for which the claim is made. The Bond provides that "suit shall be commenced not later than one (1) year from the date of Final Completion of the work under the said Contract." Labor and Materialmen's Payment Bond, at 1–2. Most revealing, however, is the letter sent by Preferred to Liberty on February 28, 2003, stating that:

> According to our records the substantial date of completion is October 4, 2001 that was signed off by the City of Pittsburgh–Department of Fire's Inspector Norm McDowell. In fact Inspector McDowell would be willing to testify on our behalf as such. Preferred Fire Protection contacted you on September 27, 2002 which would be under the one-year date to commence any action on the Payment Bond.

Preferred's letter, 2/28/03 (emphasis added). Preferred should be held to the status that it asserted in its letter that it claimed could be supported by the fire inspector's testimony, i.e., that it had completed its work. Additionally, a statement sent by Preferred to Joseph Davis, Inc. on May 14, 2002, acknowledges Davis' payment of $71,550 and shows a balance due by Davis of $43,093, which Preferred considered to be more than 90 days past due.

¶ 2 I also note that the decision in *Valley Forge Indus., Inc. v. Armand Constr., Inc.*, 38 Pa.Cmwlth. 603, 394 A.2d 677 (1978), relied on by Preferred, refers to the "work performed upon the demand of the contracting body to correct defects in the work as originally completed." *Id.* at 679. That was not the situation here. Also in *Valley Forge*, it is evident that the court discussed the work to be completed as being substantial and not, as here, the mere turning of a valve handle and resetting the system to facilitate the second inspection.

¶ 3 By Preferred's own words, the work was completed on October 4, 2001, following inspection by the city's fire inspector, thus, triggering Preferred's demands for payment. The second inspection related only to the acquisition of an occupancy permit that did not involve work contemplated by the contract between Preferred and Davis or under the bond with Davis' insurer, Liberty. Because I would find that no genuine issue of material fact existed for a jury to decide, I would conclude that the trial court did not err as a matter of law when it granted Liberty's motion for summary judgment. Therefore, I would affirm.