Stewart *v.* North Carolina Mutual Life Insurance
Company, Appellant.

Argued June 11, 1958. Before RHODES, P. J., HIRT,
GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS,
JJ.

Before BURCH, J., without a jury.

*Rufus Scoville Watson,* for appellant.

*Arnold H. Winicov,* for appellee.

OPINION BY HIRT, J., September 11, 1958:

Plaintiff had been an agent of the defendant insurance company under an oral contract since February 1947. A written contract was entered into by the defendant with the plaintiff effective as of January 5, 1953 which then supplanted the prior oral arrangement. Plaintiff severed his relationship as an agent of the defendant company by resigning in March 1953 to become effective on April 6, 1953. This action was brought by plaintiff under the written contract to recover his commissions on the collection of premiums due on his industrial policy debit for the quarter, January 5, 1953, to April 6, 1953, admittedly amounting to a total of $4,738.71. The suit was for 17% of that amount or $805.58.

The case was tried by Judge Burch without a jury. In support of the averment of his amended complaint, plaintiff testified that he was not paid any commissions on the collections made by him during the period. In its answer the defendant averred that plaintiff had been paid all of the compensation to which he was entitled, in accordance with the formula set forth in Article II of the written contract. And the defendant's testimony was to the same effect. The finding of the trial judge was for the defendant, whereupon the plaintiff moved

for judgment in his favor n.o.v. In disposing of this motion the court en banc took the view that the contract of January 5, 1953 merely reduced to writing the previous oral agreement as to the payment of compensation, although there is no evidence in the present record to this effect. And that court under its construction of the written contract concluded from the testimony before it, that plaintiff had not been paid for the last quarter (i.e., January 5, to April 6, 1953) of his employment with the defendant and accordingly reversed the finding of the trial judge and found for the plaintiff n.o.v. in the sum of $805.58.

The court below thus stated the controlling issue: ". . . was the plaintiff's compensation as agent deferred from one quarter year to the next, or was compensation paid to him for the current quarter based on commissions earned during the previous quarter year?"

Defendant places its reliance upon Article II Item IV of the frequently ambiguous contract which reads as follows: *"Distributable Commissions*—based upon my record for a fiscal quarter, shall be paid during the thirteen weeks' period commencing with the fourth week of the succeeding fiscal quarter, the amount of the weekly payment to be 1/13 of the sum of New Business Commissions on Weekly Debit Policies Issued to my Credit . . . plus Collection Commissions on Weekly Debit Accounts (described in Item VI below) . . ."

If, as it appears from the foregoing language, distributable commissions based upon an agent's record for a fiscal quarter were to be paid during the succeeding fiscal quarter, it follows that in this instance the amount of the payment received by plaintiff during the last quarter he worked, were based on his record of the previous fiscal quarter (at the admitted rate of 17%) at which time they were earned. Our conclusion, that plaintiff consequently was not paid for the collec-

tions made by him during the last quarter he worked, is fortified by the following considerations: (1) a contrary conclusion would totally deprive an agent of any benefits whatever from his collections made during the last quarter he worked no matter how large they might be—a highly inequitable result. (2) Articles II Item I of the contract reads as follows: "A. Beginning with the first week of my fiscal quarter, to and inclusive of the third week of my second fiscal quarter, there shall be payable to me for services performed for each week I work under this agreement an advance commission of $......, such advance commission to be cancelled if I am in the employment of the Company for a period of five consecutive years."

We agree with the conclusion of the court below with respect to the contract provision above quoted: "This provision of the written contract furnishes that corroboration of the plaintiff's testimony which the trial judge had felt was lacking. Although the amount of weekly compensation was left blank in Article II, Item I-A of the written contract it is clear that, reading this provision as a whole it confirms the testimony of the plaintiff, that for the first quarter of his employment his compensation was to be at a fixed weekly sum and that the sum so advanced to him was to be repaid to the company, unless he continued in the company's employment for a period of five years in which event his obligation to the company to repay the sum advanced to him during the first quarter was cancelled. Hence it furnishes convincing corroboration of the plaintiff's version that for the first quarter of his original employment he was in effect unpaid and that, from that time on all compensation was on a deferred basis so that he was not paid for the last quarter of his employment and is entitled to receive payment of the sum which is undisputed, namely, $805.58."

It is unimportant whether as contended by plaintiff that he repaid the $35 weekly which he received when he first started to work for defendant in 1947. The significant factor is that such money was not then earned but was in the nature of "advance commission" not repayable to the company by the agent, unless the agent was employed by the company for less than a five year period.

Defendant in this case has raised an additional defense to claimant's claim, namely, that claimant is barred by the contractual period limiting plaintiff's right of action. In this connection Article IV Item IV of the contract provides: "No action at law or suit in equity relating to any agency shall be maintainable unless sixty (60) days shall have expired after service by postpaid registered letter upon the President or Secretary of the Company of a written statement of the particulars and amount of any claim against the Company, nor after six (6) months from the date of the transfer of my business to my successor or other agent. I expressly agree that if any action or suit shall be commenced after such six months from the date of such transfer the lapse of time shall be taken to be conclusive evidence against any claim, the provisions of any and all statutes of limitations to the contrary being hereby expressly waived."

On cross-examination of plaintiff it was brought out that a letter was written to defendant company on plaintiff's behalf by his attorney giving the particulars of his claim against the defendant. Defendant did not contradict plaintiff's testimony to this effect. However, defendant relies on the fact that the present action was not brought until December 16, 1954 more than one year and eight months after plaintiff's successor was appointed on April 13, 1953. A special agreement as to the time within which an action may be brought is

binding on the parties, and statutes of limitation do not apply. *Hocking v. Insurance Co.,* 130 Pa. 170, 179, 18 A. 614; *Brady v. Prudential Ins. Co.,* 168 Pa. 645, 32 A. 102; *Sudnick v. Home Friendly Ins. Co.,* 149 Pa. Superior Ct. 145, 27 A. 2d 468; *O'Connor v. Allemannia Fire Ins. Co.,* 128 Pa. Superior Ct. 336, 194 A. 217. But in this case we agree that there was no burden on the plaintiff to ascertain when if ever a new agent was appointed to succeed him; and in the absence of notice to plaintiff of the fact and the date of such appointment the provision of the agreement as to the time of bringing action, in our view, did not apply. Cf. *Nanty-Glo Borough v. Amer. Surety Co.,* 316 Pa. 408, 175 A. 536.

Nor is plaintiff barred by his release given to defendant in connection with the "Interim Statement of [his] account with North Carolina Mutual Life Insurance Company" since on its face it was specifically stated to be "subject to a final statement of . . . commission account to be tendered by the company within one year from the date of the Interim Statement."

As stated by the Supreme Court in *Darby v. Ventresca,* 337 Pa. 220, 222, 10 A. 2d 389: "Since the case was tried without a jury, if the finding of the trial judge was not justified by the evidence, all that was necessary, and it would seem that justice required it, was for the court to reverse the finding and enter a finding in favor of the plaintiff." Accordingly the judgment of the court below en banc in favor of plaintiff is affirmed.