## The General State Authority, Plaintiff *v.* The Sutter Corporation and Certain-Teed Products Corporation, Defendants; Dunmore Roofing & Supply Co. et al., Additional Defendants.

Argued December 4, 1978, before Judges CRUM-LISH, JR., BLATT and CRAIG, sitting as a panel of three.

No appearance for plaintiff.

*Anthony J. Ciotola,* with him *Feldmann & Ciotola,* for defendant, The Sutter Corporation.

*Roger T. Shoop, Robert J. Brown,* and *Bernadette Barattini,* with them *Kain, Brown, Roberts & Woodbury; Richard H. Wix; Wix, Wenger & Weidner; Stephen R. Krone; James K. Thomas; Thomas & Thomas; Armand E. Olivetti, Jr.; Dunn, Byrne & Coviello,* for additional defendants.

OPINION BY JUDGE CRAIG, July 10, 1979:

We have before us a second round of preliminary objections in this original jurisdiction action in assumpsit commenced by the General State Authority (GSA) against the general building-construction contractor, Sutter Corporation (Sutter), and against the supplier of roofing materials, Certain-Teed Products Corporation (Certain-Teed), for damages arising from difficulties encountered with the roof of a newly-constructed annex to the Scranton State General Hospital. The roofing subcontractor, Dunmore Roofing and Sheetmetal Company (Dunmore) has also properly been joined as an additional party-defendant. *General State Authority v. Sutter Corporation,* 24 Pa. Commonwealth Ct. 391, 356 A.2d 377 (1976), is our previous decision in this case granting the motions of

Sutter and Certain-Teed for a more specific complaint, with which GSA complied by filing its Second Amended Complaint.[1]

The current preliminary objections have been raised against subsequent complaints filed by the original defendant, Sutter, attempting, under Pa. R.C.P. No. 2252, to join as additional defendants: (1) the architects, George M. D. Lewis and Donaldson Berghauser, individually, and t/d/b/a Lewis and Berghauser; (2) the surety behind the "Built-up Roof Guarantee" issued by Certain-Teed, National Surety Corporation (National); and, (3) the supplier of the roofing insulation, Owens-Corning Fiberglass Corporation (O-CF).

### The Preliminary Objections of Donaldson Berghauser, individually and t/d/b/a Lewis and Berghauser

General Contractor Sutter's complaint joining the architects is in assumpsit and alleges the existence of a contract between GSA and the architects under which the architects agreed to supply various architectural services and also agreed to supervise and inspect the work generally and thereby protect GSA against deficiencies in the work of roofer Dunmore and defects in the materials used. Sutter also alleges

---

[1] Plaintiff, in its Second Amended Complaint, alleges that one of the causes of the damaged condition of the roof was Sutter's breach of its construction contract, in that roofing subcontractor Dunmore improperly installed the roof by failing to comply with Certain-Teed's specifications for the laying of a "Built-up Roof." The contract between GSA and Sutter incorporated such specifications by reference. Count II of the complaint alleges that Certain-Teed failed to supply roofing materials which were fit for their intended purpose. Plaintiff seeks as damages the cost of replacing the entire roof, alleging that repairs would not be sufficient to rectify the defective condition of the roof and that neither Sutter nor Certain-Teed will replace the roof.

specific duties of the architects to visit the construction site at least weekly and to make periodic written reports of their inspection and supervision.

However, the only averments of liability by Sutter, in paragraphs 14 and 15 of the complaint, are that if it is determined that the roof is defective and was not installed according to the plaintiff's and Certain-Teed's specifications, or if it is determined that defective materials were used, then the architects are alone liable, or jointly and severally liable, or liable over to the original defendant.

We must agree with the architects that bald allegations of the existence of contractual duties of inspection and supervision in the architects cannot support a theory of liability to, or a right to indemnification, in the general contractor. The statement of "liability over" to Sutter is a mere legal conclusion, impossible to sustain upon proof of any of the facts averred. *See Zachrel v. Universal Oil Products*, 355 Pa. 324, 49 A.2d 704 (1946).

As to the theories of sole or joint and several liability on the part of the architects, Rule 2252(b) requires that, "[t]he complaint, *in the manner and form of the initial pleading of the plaintiff* in the action, *shall set forth the facts relied upon to establish the liability of the joined party.* . . ." (Emphasis added.)[2]

Of the requirements relating to the complaint, the most important is that the facts asserted as a basis of the liability of the additional defendant be set forth, for it is the allegation of fact and not statements of legal conclusion which governs the determination wheth-

---

[2] Rule 1019 governs the complaint of the plaintiff in an action and, through Rule 2252(b), applies also to complaints by the original defendant joining additional defendants, in making a determination of whether such a complaint sets forth sufficient material facts to constitute a viable cause of action.

er the complaint alleges the requisite liability. . . . If the complaint fails to state facts sufficient to establish liability of the additional defendant, the joinder will be refused. (Footnotes omitted.)

2 STAN. PA. PRAC. 414-15 (1956 Ed.)

While the . . . [amended Rule 2252] enlarges the kinds of causes of action which may be joined, it certainly does not eliminate the necessity of pleading a valid cause of action.

In the earlier opinion in this same case, Judge CRUMLISH, quoting from *Baker v. Rangos,* 229 Pa. Superior Ct. 333, 349, 324 A.2d 498, 505 (1974), pinpointed the gist of Rule 1019(a) as requiring fact-pleading, meaning that the pleader must disclose, " 'the " 'material facts' sufficient to enable the adverse party to prepare his case. . . .' ' ' " (Citation omitted.) Therefore, a complaint must go beyond giving mere notice of the claim; " '[i]t should formulate the issues by fully summarizing the material facts. ''Material facts'' are ''ultimate facts,'' i.e., those facts essential to support the claim.' " *General State Authority v. Sutter Corporation,* 24 Pa. Commonwealth Ct. at 395, 356 A.2d at 381.

The complaint here simply alleges the existence of a contract and certain contractual duties flowing from the architects to the plaintiff and that if the roof was defective, the cause is the architects' breach of their contract. However, the complaint contains no allegations of any material facts that would constitute a breach of that contract. The complaint refers to no specific acts of commission or omission on the part of the architects which can serve to put them on notice of what facts constituting the breach either GSA or Sutter intend to prove at trial. Facts establishing the breach of that contract must be alleged to set out a cause of action in assumpsit. Although it is true

that joinder pleading may be done in the hypothetical form, that does not obviate the necessity of pleading facts sufficient to set forth a cause of action. 8 Goodrich-Amram §2252(b) :3, pp. 80-83.

However, a review of the factual situation outlined by all the pleadings in this case prevents us from saying that as a matter of law it would be impossible for Sutter to plead a valid theory of sole or joint liability against the architects. *See, e.g., Kladias & Son v. Sonneborn Building Products, Inc.*, 2 Pa. D. & C. 3d 310 (1975). Therefore, we will sustain the preliminary objections of the architects to Sutter's complaint and dismiss it, but allow Sutter leave to amend to plead a viable theory of liability against the architects and sufficiently specific facts to support it.

### The Preliminary Objections of National Surety Corporation

National Surety issued a "Blanket Bond" to back up the "Built-up Roof Guarantee" of roofing supplier Certain-Teed that, subject to certain conditions and limitations, Certain-Teed agreed to make any necessary repairs, additions or alterations in connection with the "roof membrane," at Certain-Teed's expense, with respect to all roofing materials applied in accordance with the applicable specifications of Certain-Teed.

Under Section 1 of the Act of July 24, 1913, P.L. 971, 8 P.S. §1, National's bond must be considered to be a contract of suretyship.[3]

---

[3] The statute provides:

Every written agreement hereafter made by one person to answer for the benefit of another shall subject such person to the liabilities of suretyship, and shall confer upon him the rights incident thereto, unless such agreement shall contain in substance the words: 'This is not intended to be a contract of suretyship,' or unless each portion of such agreement intended to modify the rights and liabilities of

The general rule is that a surety assumes no liability or obligation beyond those set forth in the suretyship agreement; likewise, a bond obligation does not extend beyond the express obligation set out in the agreement. *Peter J. Mascaro Co. v. Milonas*, 401 Pa. 632, 166 A.2d 15 (1960); 35 P.L.E. §§52, 58, pp. 365-66, 372-73. *See also, Miller v. Commercial Electric Construction, Inc.*, 223 Pa. Superior Ct. 216, 297 A.2d 487 (1972).

The bond expressly limits National's liability to $5,196.00. However, general contractor Sutter argues that, because plaintiff GSA alleges that the entire roof must be replaced and is not just in need of repairs, the surety would be liable for any damage that can be shown to have been caused by the allegedly defective materials supplied by Certain-Teed.

Assuming that warranties on the roofing materials were made, they were made only by Certain-Teed. To find that National intended to back entirely any warranty made by Certain-Teed, express or implied, would be for us to invent a new suretyship agreement. The surety could not be liable to anyone beyond the express limits set forth in its bond.

There is the further question of whether there exists any theory of liability of the surety to Sutter, even to the extent of $5,196.00.

Sutter seems to argue that, by analogy to the extension of warranties beyond privies to the contract

---

suretyship shall contain in substance the words: 'This portion of the agreement is not intended to impose the liability of suretyship.'

The "Built-up Roof Guarantee" appended to the pleadings does not contain the substance of the words required by the statute. We note that the document provides that the laws of the state of New York shall govern the agreement, but since neither party has raised that issue, we must presume that it is irrelevant to the result we reach.

in Uniform Commercial Code[4] cases and products liability claims under Section 402A of the Restatement 2d of Torts, it can be considered to be the beneficiary of warranties under the contract of sale between Dunmore and Certain-Teed. *See, e.g., Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968); *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 319 A.2d 903 (1974]; *Salvador v. Atlantic Steel Boiler Co.,* Pa. , 389 A.2d 1148 (1978).

The answer is that this is not a products liability case involving personal injury under Section 402A of the Restatement 2d of Torts, nor, as far as the surety is involved, is this a case of a manufacturer-supplier of goods under the Uniform Commercial Code. National is simply not a manufacturer of goods nor a seller of goods, is not a party to any contract for the sale of goods and therefore does not come under the warranty provisions of the Article 2 of the Uniform Commercial Code.

The theories of liability against the surety, if any exist on these facts, are governed by the non-statutory law of third-party beneficiaries to a contract.

The basic Pennsylvania law in that area is that stated in *Spires v. Hanover Fire Insurance Co.*:

> To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by *one* of the parties to the contract and the *third person* that the latter should be a beneficiary, but *both parties to the contract* must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally

---

[4] Act of April 6, 1953, P.L. 3, reenacted by the Act of October 2, 1959, P.L. 1023, *as amended,* 12A P.S. §1-101 et seq.

assumed by him in his undertaking; the obligation to the third party must be created and must affirmatively appear, in the contract itself. . . . (Footnote omitted.) (Emphasis in original.) 364 Pa. 52, 56-57, 70 A.2d 828, 830-31 (1950). *Accord, Van Cor, Inc. v. American Casualty Company of Reading,* 417 Pa. 408, 208 A.2d 267 (1965).

There clearly is no intent to benefit the general contractor expressed in the instant suretyship agreement.[5]

Finally, as to National's sole liability to GSA to the extent of the guarantee, the terms of the bond itself provide a one-year limitation within which its beneficiary, GSA, may bring an action under it. Parties may agree to time limitations on the commencement of actions under an agreement shorter than that

---

[5] Several more recent cases have discussed the more liberal standard of determining whether a party asserting a right under a contract is an intended beneficiary. That standard, found in Section 313 of the Restatement of Contracts 2d, allows a party to assert third-party beneficiary status under a contract if *circumstances* surrounding the execution of the contract indicate that the promisee intends to give the third-party the benefit of the promised performance. *See, Pennsylvania Liquor Control Board v. Rapistan, Incorporated,* 472 Pa. 36, 371 A.2d 178 (1976) ; *Hillbrook Apartments, Inc. v. Nyce Crete Co.,* 237 Pa. Superior Ct. 565, 352 A.2d 148 (1975). Under that view, a third party would be an intended beneficiary if he could reasonably rely on the contract as manifesting an intent to confer a right on him. *Pennsylvania Liquor Control Board v. Rapistan Incorporated, supra.* Thus, Sutter's complaint would have to allege facts showing that it could reasonably assume that Certain-Teed intended to confer a right on the general contractor to National's performance under the terms of the suretyship agreement. We cannot see the existence of such reliance. The most that can be said about the guaranty has already been said in our prior opinion dealing with the complaint against Certain-Teed. The suretyship agreement, if proven, would remove *Dunmore* from liability, to the extent of the guarantee, with *Certain-Teed* incurring the primary liability. *General State Authority v. Sutter Corporation,* 24 Pa. Commonwealth Ct. at 396, 356 A.2d at 381.

provided by law. *Stewart v. North Carolina Mutual Insurance Company,* 187 Pa. Superior Ct. 270, 144 A. 2d 507 (1958).

In this case, the bond provided that an action under it must be commenced within one year after the discovery of any defect in the roof. The plaintiff here obviously discovered defects before June 6, 1975 because that is the date of plaintiff's original complaint in this action. Sutter filed the writ joining National on July 30, 1976, more than one year after plaintiff's complaint. Because none of the parties in this action, with ample time and knowledge, chose to join National sooner, we hold that the express terms of the bond itself preclude National's sole liability to GSA, even to the extent of $5,196.00.

### The Preliminary Objections of Owens-Corning Fiberglass Corporation

The preliminary objections raised by Owens-Corning (O-CF) would have us dismiss the complaint against it without further leave to amend, on the grounds that it is so deficient it could not possibly be amended to state a cause of action.

Sutter's complaint merely alleges that O-CF supplied the roofing insulation and that, if it is determined at trial that O-CF's insulation was defective and not fit for its intended purpose, O-CF is solely, jointly and severally, or liable over to Sutter on GSA's cause of action. However, in light of Paragraph 6 of plaintiff's Second Amended Complaint, which Sutter incorporates into its complaint by reference, which alleges that O-CF *sold* the insulation to Sutter's subcontractor, Dunmore, we cannot say that Sutter fails to present the bare bones of a cause of action under Rule 2252(a). *See Kassab v. Central Soya, supra* (establishing that a manufacturer-supplier of defective goods need not be a party to the con-

tract of sale in order to make warranties to the ultimate user or purchaser under the Uniform Commercial Code).

However, Sutter makes most of its breach of warranty arguments in its brief; we must confine ourselves to the averments in the pleadings. The pleadings are defective because they do not allege material and specific facts necessary to the theory of liability relied upon.

Under Rule 1019(a), the complaint must state material facts necessary to support the cause of action, and under Rule 1019(f), specifically make averments as to time, place and items of special damage.

The complaint contains no specification of time or place of sale as would be required by Rule 1019(f). We have previously noted that allegations of time are crucial in determining when a cause of action arose, and therefore such facts must be specific enough so that a defendant is capable of pleading the bar of the statute of limitations if applicable. *See General State Authority v. Lawrie and Green*, 24 Pa. Commonwealth Ct. 407, 356 A.2d 851 (1976). In a case of breach of warranty in a sales transaction, the applicable section of the Uniform Commercial Code is Section 2-725, 12A P.S. §2-725, and under it, "A breach . . . occurs when the tender of delivery is made to the buyer who . . . in any event has four years from that date to use the goods and ascertain whether any implied warranties have been breached." *Salvador v. Atlantic Steel Boiler Co.,* Pa. at , 389 A.2d at 1154-55. Therefore, it is essential that Sutter plead the date of the tender of delivery under the contract of sale entered into by O-CF for the insulation.

Secondly, the complaint says nothing about the nature of the defect in the insulation sold. At the very least, to sustain a claim of breach of warranty, the

complaint must allege that the product was defective and in what manner it was defective so as to cause the damages alleged.

We note that Sutter would have us review the discovery materials which have been produced since the filing of the complaint to ferret out the necessary facts which are lacking in the complaint. Our Superior Court has already answered that contention in *Gross v. United Engineers and Construction, Inc.*, 224 Pa. Superior Ct. 233, 235, 237, 302 A.2d 370, 371, 372 (1973), as follows:

> Any information subsequently supplied by plaintiff upon deposition requested by defendant cannot be used to supply the missing allegata of the Complaint. The sufficiency of the Complaint is governed by the facts alleged therein and the fact that the lacking information subsequently was or could be supplied is not governing.
>
> . . . .
>
> '. . . The plaintiff still has the burden of filing a complaint which supports his claim, and if he lacks any information necessary to the preparation of his complaint he may obtain discovery:' 2A Anderson Pa. Civil Practice, §1019.8 (1969 Edition), page 85. The proper procedure, therefore, for plaintiff to have followed in obtaining information necessary to the preparation of an adequate Complaint was to commence his action by filing a praecipe for a writ. 'The action then having been commenced, the plaintiff would be free to obtain discovery within the scope and subject to the limitation of rules.' 5 Anderson Pa. Civil Practice, §4001.18 (1966, Edition), page 33.

We will enter an appropriate order.

## Order

And Now, this 10th day of July, 1979, it is hereby ordered that:

1. The preliminary objections of additional defendant Donaldson Berghauser, individually and t/d/b/a Lewis & Berghauser, are sustained. Sutter is hereby granted leave to file an amended complaint within 20 days.

2. The preliminary objections of the additional defendant National Surety Corporation are sustained, and the complaint of Sutter Corporation joining National Surety Corporation as an additional defendant is hereby dismissed with prejudice.

3. The preliminary objections, in the nature of a demurrer by the additional defendant Owens-Corning Fiberglass Corporation, are hereby dismissed.

4. Owens-Corning Fiberglass Corporation's motion for a more specific pleading under Rule 1019(a) and (f) is granted to the extent that Sutter Corporation must incorporate into its complaint facts establishing what warranties were made, a breach of warranty, and the nature of the defects in the product that constituted the breach of warranty. Furthermore, under Rule 1019(f), specific averments of the date and place of the tender of delivery under the contract of sale for the insulation materials must be included in the complaint.