**TUDOR DEVELOPMENT GROUP, INC., Sidney Cohen, Dorothy Cohen, Marc Cohen, t/a Green Hill Associates, Plaintiffs,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant.**

**Civ. A. No. 88–0758.**

United States District Court, M.D. Pennsylvania.

Aug. 25, 1988.

---

Mitchell R. Leiderman, Hunn, Shelly & Samel, Lansdale, Pa., for plaintiffs.

R. James Reynolds, Jr., Foulkrod, Reynolds & Havas, Harrisburg, Pa., for U.S. Fidelity & Guar. Co.

## MEMORANDUM

CALDWELL, District Judge.

Defendant, United States Fidelity and Guaranty Co. (USF & G) has filed a combined motion to dismiss, motion to strike and motion for a more definite statement. Plaintiffs, Tudor Development Group, Inc. and Sidney Cohen, Dorothy Cohen and Marc Cohen, trading as Green Hill Associates, a limited partnership (Green Hill), al-

lege various causes of action against USF & G, the surety for certain phases of a real estate development, (the Green Hill Project or Project), being constructed for Green Hill by Susquehanna Construction Co. (the "Contractor"). Basically, the complaint alleges that the Contractor's performance under its contract with plaintiffs was deficient and that, pursuant to a suretyship agreement and certain performance bonds issued by USF & G, the latter became liable for the Contractor's breach of contract. Direct claims are also made against defendant.

■ Defendant seeks dismissal of count I of the complaint to the extent it seeks recovery for Phase III of the Project. The complaint alleges that the Project was divided into three phases (¶ 8), and that defendant "agreed to provide performance bonds for the three phases of construction." (¶ 10). USF & G did issue bonds for Phases I and II but "subsequently refused to issue a bond for Phase III of the Project despite verbal and written assurances from its agent ... that such bonding would be issued for all three phases of the Project." (¶ 11). The Contractor's performance was deficient on all three phases (¶¶ 12 and 13) and count I seeks recovery for the entire Project even though performance bonds were issued only for the first two phases. Plaintiff alleges that defendant, through "previous representations and assurances" had "contractually committed" itself to provide a bond for Phase III as well.

Defendant asserts that these allegations are insufficient to assert a claim for Phase III; that Pennsylvania law requires a suretyship contract to be in writing. And, that in the absence of a written agreement, the claim for Phase III must be dismissed. Defendant relies upon the following statutory section, quoted in pertinent part, as follows: "No action shall be brought ... whereby to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person

by him authorized." 33 P.S. § 3 (Purdon 1967). USF & G also cites *Leonard v. Martling,* 174 Pa.Super. 206, 100 A.2d 484 (1953) (oral promise to answer for the debt of another unenforceable pursuant to 33 P.S. § 3), *aff'd,* 378 Pa. 339, 106 A.3d 585 (1954). In response, plaintiff seems to assert that an oral agreement is sufficient. We disagree and conclude that count I as to Phase III must be dismissed. *See generally, Blumer v. Dorfman,* 447 Pa. 131, 289 A.2d 463 (1972).

■ Defendant contends that count II should be dismissed because it is based upon the Contractor's breach of warranties given to Green Hill in the construction contract but the performance bonds do not provide coverage for, nor even mention, breaches of warranties. Defendant cites *General State Authority v. Sutter Corp.,* 44 Pa.Cmwlth. 156, 403 A.2d 1022 (1979) in its support. Defendant's reliance upon *General State Authority* is misplaced. In that case, the original defendant, Sutter Corporation, attempted to join National Surety Corporation, surety for Certain–Teed Products Corporation, in a suit for damages arising from an alleged defective roof on a Pennsylvania State Hospital. National Surety had issued a bond for the guarantee Certain–Teed had made on its roof membrane for the hospital. USF & G quotes the first and second paragraph of the following portion of the opinion. We will include the middle paragraph as well:

The general rule is that a surety assumes no liability or obligations beyond those set forth in the suretyship agreement; likewise, a bond obligation does not extend beyond the express obligation set out in the agreement. *Peter J. Mascaro Co. v. Milonas,* 401 Pa. 632, 166 A.2d 15 (1960); 35 P.L.E. §§ 52, 58, pp. 365–66, 372–73. *See also Miller v. Commercial Electric Construction, Inc.,* 223 Pa.Super. 216, 297 A.2d 487 (1972).

The bond expressly limits National's liability to $5,196.00. However, general contractor Sutter argues that, because plaintiff GSA alleges that the entire roof must be replaced and is not just in need of repairs, the surety would be liable for

any damage that can be shown to have been caused by the allegedly defective materials supplied by Certain–Teed.

Assuming that warranties on the roofing materials were made, they were made only by Certain–Teed. To find that National intended to back entirely any warranty made by Certain–Teed, express or implied, would be for us to invent a new suretyship agreement. The surety could not be liable to anyone beyond the express limits set forth in its bond.

*Id.* at 163, 403 A.2d at 1026.

The Commonwealth Court then went on to conclude that Sutter could not sue as a third party beneficiary of the National bond issued to Certain–Teed even to the extent of the amount of the bond.

Defendant would argue that *General State Authority* supports its position here that, absent language in the performance bonds covering the Contractors' warranties, it has no duty to provide such coverage. But the middle paragraph of the quote makes clear that the Commonwealth Court was not dealing with that issue at all. It was only rejecting an attempt by Sutter to expose National to any and all damages arising from a breach of warranty by Certain–Teed. Thus, the opinion implicitly concedes that National would be liable for a Certain–Teed breach of warranty by mentioning several times National's limit of liability on the bond of $5,196.00. At the same time, however, it rejects any attempt to impose liability for "any warranty made by Certain–Teed"; that is, a warranty for an unlimited amount because the "surety could not be liable to anyone beyond the express limits set forth in its bond." *Id.*, 403 A.2d at 1026. That the above discussion in *General State Authority* did not deal with the scope of the bond's coverage is made clear from the court's following statement made in connection with the intended beneficiary issue:

The most that can be said about the guaranty has already been said in our prior opinion dealing with the complaint against Certain–Teed. The suretyship agreement, if proven, would remove *Dunmore* from liability, to the extent of the guarantee, with *Certain–Teed* incurring the primary liability. *General State Authority v. Sutter Corporation*, 24 Pa. Comwlth. [391] at 396, 356 A.2d [377] at 381 [ (1976) ].

*Id.* at 165 n. 5, 403 A.2d at 1027 n. 5. (emphasis in original). Thus, National did have an obligation under its bond but it was not in excess of the bond's limit and it was only in favor of Dunmore Roofing and Sheetmetal Co., the roofing subcontractor which had purchased the roof membrane from Certain–Teed.

In the instant case, plaintiffs' position is more akin to Dunmore's than Sutter's. Green Hill is the obligee of the performance bonds and to determine whether a claim can be made under the bonds, we must use the following standard, bearing in mind plaintiffs' pertinent observation that the performance bonds in the instant case incorporate by reference the construction agreement with the Contractor:

"A bond given pursuant to a contract incorporated in the bond, will be construed in the light of the terms of the contract and the attendant circumstances, but 'the obligation of a bond cannot be extended beyond the plain import of the words used.' [City of] *Lancaster v. Frescoln*, 192 Pa. 452, 457, 43 A. 961, 962; [City of] *Erie v. Diefendorf*, 278 Pa. 31, 122 A. 159." *Fleck–Atlantic Co. v. Indemnity Insurance Co. of North America*, 326 Pa. 15, 19, 191 A. 51, 53. Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning. *City of Pittsburgh, to Use of H.M. Kamin Agency v. Parkview Construction Co.*, 344 Pa. 126, 23 A.2d 847, 848.

*Commonwealth ex rel. Pennsylvania Manufacturers' Assn' Casualty Ins. Co. v. Fidelity & Deposit Co.*, 355 Pa. 434, 437, 50 A.2d 211, 212 (1947).

The bonds given in the instant case meet this standard. In *Pennsylvania Supply Co. v. National Casualty Co.*, 152 Pa.Super. 217, 31 A.2d 453 (1943), the plaintiff, a supplier of material for the construction of

a house, sued the defendant bonding company for payment. The bond, between the owner of the residence as obligee and the defendant, provided as follows:

[T]he "contract is hereby referred to *and made a part hereof as fully and to the same extent as if copied at length herein.*" The condition of the bond is: "That if the above bounden principal shall well and truly keep, do and perform, *each and every, all and singular, the matters and things in said contract set forth* and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, *and* shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this Obligation shall be void; otherwise to be and remain in full force and effect."

*Id.* at 219, 31 A.2d at 455 (emphasis in original) (brackets added). The Pennsylvania Superior Court concluded that the materialman was entitled to sue on the bond because of the above language insuring the performance by the contractor of each and every duty under the construction contract which, in turn, had required the contractor to pay for all material.

The bonds in the instant case contain similar language. For example, the performance bond for Phase I provided, in relevant part, that USF & G, as surety, would be held and firmly bound to Green Hill, as obligee, and noted further that:

WHEREAS, Contractor has by written agreement dated July 11, 1986, entered into a contract with Owner for General construction of the Green Hill Apartment project Phase I, consisting of 4 type A, 4 type B and 1 Type E buildings.... which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The performance bond for Phase II contains almost identical language, differing only by containing a brief description of Phase II rather than Phase I. This language expressly incorporates the construction contract and discharges the surety's obligation only when the Contractor has "promptly and faithfully" performed under the contract. In count II of their complaint, plaintiffs allege that the contractor violated a number of express and implied contractual duties for which they seek to hold defendant responsible under the terms and conditions of the bond it supplied. Accordingly, the motion to dismiss count II of the complaint must be denied.[1]

■ Defendant next seeks dismissal of count III of the complaint which is based upon the allegedly fraudulent conduct of the Contractor. Defendant contends that it did not undertake to insure against the Contractor's fraudulent conduct. Based upon the foregoing discussion concerning the requisite contractual language, we agree with defendant and we will dismiss this count.

■ Defendant also moves for dismissal of count IV, a claim for the breach of the contractual duty of good faith and fair dealing. Defendant cites *D'Ambrosio v. Pennsylvania National Mutual Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981), in which the Pennsylvania Supreme Court held that an insured could not maintain such an action against his insurance company since the Unfair Insurance Practices Act, 40 P.S. 1171.1 *et seq.* (Purdon Pamphlet 1988–89), provided an adequate deterrence against bad faith conduct by insurance companies. In response, plaintiffs would distinguish insurance contracts from suretyship agreements, contending that the breach of a suretyship agreement could have far greater consequences than the breach of an insurance contract. They also rely upon *General Insurance Co. of Amer-*

---

1. Of course, our previous discussion makes this denial applicable only to Phases I and II of the Project. Plaintiffs can assert no claim as to Phase III.

*ica v. Mammoth Vista Owners Ass'n*, 174 Cal.App.3d 810, 220 Cal.Rptr. 291 (1985).

We agree with defendant. In *D'Ambrosio*, the pennsylvania Supreme Court rejected the rationale of *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), which recognized in California the tort of breach of the duty of good and fair dealing as against insurance companies. *Mammoth Vista,* cited by plaintiffs, relied heavily upon *Gruenberg* to hold that a surety could be liable in tort for the same conduct. Accordingly, in light of *D'Ambrosio* and the fact that the Pennsylvania Unfair Insurance Practices Act applies to suretyship agreements as well as insurance contracts, *see* 40 P.S. § 1171.3, (definition of "insurance policy" or "insurance contract"), we will dismiss count IV of the complaint.

■ Defendant has also moved to dismiss the demand for punitive damages in counts I, II and III, arguing that punitive damages are not recoverable in a contract action, *see Mazzula v. Monarch Life Ins. Co.*, 487 F.Supp. 1299 (E.D.Pa.1980), and that the tort claims in counts II and III are not valid and cannot support a demand for punitive damages. We agree and will dismiss the demands for punitive damages.

■ Finally, defendant moves to strike the demand for a specific sum in the prayers for relief in counts I, II and III, contending that it violates Local Rule 107.1 which prohibits a claim for a specific amount when unliquidated damages are involved. Plaintiffs argue that they have not demanded a specific sum. We disagree. The demand for "at least" the specific sums mentioned in the prayers for relief, while also requesting a greater, unliquidated amount, violates the Rule. Plaintiffs shall be required to amend.[2]

We will issue an appropriate order.

### ORDER

AND NOW, this 25th day of August, 1988, upon consideration of defendant's motion to dismiss, to strike, and for a more definite statement, it is ordered that:

1. Count I of the complaint is dismissed to the extent it seeks recovery for Phase III of the Project.

2. The motion to dismiss count II is denied.

3. Counts III and IV are dismissed.

4. The demand for attorney's fees in counts I, II, III and IV are dismissed.

5. The demand for punitive damages in counts I, III and IV are dismissed.

6. The plaintiffs' prayer for specific sums in counts I, II and III are stricken and plaintiffs shall file an amended complaint in conformity with Local Rule 107.-1.

7. The amended complaint shall also name the general partners of the limited partnership in the body of the complaint as plaintiffs.

8. The amended complaint shall be filed within twenty (20) days of the date of this order, or this action may be dismissed.

---

2. When they do so, plaintiffs shall also set forth in the body of the complaint, the names of the general partners of the limited partnership as plaintiffs.

We will also strike plaintiffs' demand for attorney's fees since they have not opposed that aspect of defendant's motion.