# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jack Soberick,                          :
                    Appellant           :
                                        :
          v.                            :  No. 699 C.D. 2024
                                        :  ARGUED:  April 8, 2025
Lansford Borough                        :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MATTHEW S. WOLF, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## <u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED: August 8, 2025**

Appellant, Jack Soberick, appeals from an order of the Court of Common Pleas of Carbon County denying his petition for review of an arbitration award wherein the arbitrator concluded that Lansford Borough properly excluded overtime from Soberick's pension calculation.  We affirm.

The relevant background is as follows.  From December 1996 to April 2016, Soberick worked as a full-time police officer for the Borough.  From April 2016 until his May 2022 retirement, he worked as the Chief of Police.  As the Chief and a management-level employee, Soberick worked pursuant to an employment contract with the Borough.

Soberick's employment contract included what is colloquially referred to as a "me-too" clause.  In pertinent part, that clause provided:

> Any benefit or increase in benefits which is not specifically provided to the Chief in this Agreement, but which, [sic] is provided to the other members of the Police Department during the term of this Agreement, excluding

> shift differential, shall also be automatically and immediately provided to the Chief as well, and such benefits or increase in such benefits shall be part of this Agreement.

Employment Contract, Art. XIX (Additional Benefits) at 7; Reproduced Record (R.R.) at 251a. The vehicle by which the other members of the police department receive benefits is the collective bargaining agreement (CBA) between the Borough and the Fraternal Order of Police, Schuylkill-Carbon Lodge No. 13 (FOP). CBA, Art. 2 (Recognition), ¶1; R.R. at 64a.

Soberick's employment contract also included a pension plan provision providing:

> 1. The Chief shall participate in the Lansford Pension Plan of the Borough of Lansford and be subject to its provisions and be entitled to all benefits therein as allowed by Act 600.[1]
>
> 2. *All of the provisions of the Lansford Borough Ordinance No. 2004-08, amending, establishing, and continuing the Police Pension Plan pursuant to Act 600, and any amendments thereto, either prior or subsequent to, shall be made a part of this Agreement.*
>
> 3. Officers' Contribution to the Pension Plan: the Chief's contributions shall be 3.5%, or as is set in the [CBA].

Employment Contract, Art. IX (Pension Plan) at 3; R.R. at 247a (footnote added) (emphasis added).

Finally, Soberick's employment contract provided for a grievance process to resolve disputes, followed by submission to arbitration if not resolved

---

[1] The Municipal Police Pension Law, Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §§ 767-778, is commonly referred to as Act 600.

during the earlier steps of the grievance process.  Employment Contract, Art. XXIV, § 3 (Grievance-Arbitration) at 7; R.R. at 252a.

While Soberick was the Chief, the Borough and FOP entered into a March 1, 2018 CBA covering the period of January 1, 2018, to December 31, 2022. That CBA contained a provision providing: "The pension ordinance shall be amended to include that each officer will receive fifty (50%) of the last 36 months average salary to include all overtime."  CBA, Art. 9 (Pension), ¶2(a); R.R. at 71a. However, the Borough never upgraded the pension ordinance to include the overtime provision contrary to what was agreed to in the March 2018 CBA.

After Soberick notified the Borough of his retirement, it provided him with an election of retirement benefits form stating that his police pension benefit would be $2,758.64 per month effective June 1, 2022.  In August 2022, he filed a grievance contending that the monthly benefit was incorrect because the Borough in computing his average monthly salary for the last 36 months did not include his overtime pay thereby resulting in approximately $550 less per month.  The Borough stated that the grievance was being denied "until more information is obtained from your records, your attorney, and the actuary who calculated the current pension benefit.  Then this information will be forwarded to the Borough's legal counsel and then a pension settlement can be worked out."  9/08/2022 Letter; R.R. at 91a.

Subsequently, the dispute was submitted to final and binding arbitration in April 2023 before a single arbitrator pursuant to Art. XXIV, § 3 of Soberick's employment contract.  The parties stipulated to two issues, with the pertinent issue providing: "What pension amount is retired Chief Jack Soberick entitled to at retirement?"[2]  7/10/2023 Arb. Award at 3; R.R. at 17a.  Following the arbitrator's

---

[2] The other issue pertained to the amount of accrued leave benefit due and owing, which the arbitrator partially decided in Soberick's favor.  That issue is not before this Court on appeal.

denial of the grievance, Soberick filed an August 2023 petition for review of the award with the trial court. The trial court denied the petition and Soberick's appeal to this Court followed.

On appeal, we consider whether Soberick has standing to enforce the CBA, the applicable scope of review, and, depending upon whether constitutional rights are within that review, whether Soberick sustained an actionable deprivation of his constitutional rights. For the reasons that follow, we conclude that (1) Soberick has direct standing to enforce the CBA; (2) the applicable scope of review for this common law arbitration award is found in Section 7341 of the Judicial Code, 42 Pa.C.S. § 7341; and (3) alleged deprivations of constitutional rights are not within that very limited review.

## I. Standing

Soberick has direct standing to enforce the CBA by virtue of his employment contract's "me-too" clause and pension plan provision.[3] As noted, the

---

[3] Even though we need not address Soberick's standing as a third-party beneficiary to the CBA, he would satisfy the following two-part test for such standing:

> (1) the recognition of the beneficiary's right must be "'appropriate to effectuate the intention of the parties,'" and (2) the performance must "'satisfy an obligation of the promisee to pay money to the beneficiary'" or ["']*the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.*'"

*Sims v. Silver Springs-Martin Luther Sch.*, 625 A.2d 1297, 1302 (Pa. Cmwlth. 1993) (emphasis added) [quoting *Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983)]. In addition, in order to be a third-party beneficiary:

> it is not enough that it be intended by one of the parties to the contract and the third person that the latter should be a beneficiary, but both parties to the contract must so intend and must indicate that intention in the contract; in other words . . . the obligation to the third

**(Footnote continued on next page…)**

4

"me-too" clause found in Article XIX generally provided that any benefit or increase in benefits not specifically provided to him in his employment contract but provided to other members of the department shall automatically and immediately be provided to him as well. The pension plan provision found in Article IX(2) provided that amendments to the pension ordinance shall become part of his employment contract. Accordingly, it was intended that Soberick benefit directly from the Borough's promise to amend its pension plan, and he has direct standing to enforce whatever rights are mandated under the CBA.[4]

Nonetheless, both parties conflate Soberick's entitlement to the promised pension enhancement with standing. Whether the pension enhancement promise is enforceable is an entirely different issue from whether Soberick has standing to enforce whatever rights are mandated under the CBA. Accordingly, neither party's arguments hit the mark.

The Borough disingenuously cites its failure to amend its pension ordinance to reflect the overtime provision in support of its position that Soberick lacks standing. The Borough maintains that Soberick lacks standing to realize a benefit that is contained in a wholly distinct agreement (the CBA) from his own applicable agreement (the employment contract). It points out that it never amended its pension ordinance to effectuate the inclusion of overtime in the definition of

---

party must be created and must affirmatively appear, in the contract itself [.]

*Id.* [quoting *Gen. State Auth. v. Sutter Corp.*, 403 A.2d 1022, 1026-27 (Pa. Cmwlth. 1979)].

[4] It is also apparent that Soberick's employment contract and the CBA were intended to be reciprocal as to benefits. In addition to the employment contract's "me-too" clause found in Article XIX and the pension plan provision found in Article IX(2), Article 20(6) of the CBA stated that any benefits provided to the Chief in his contract "shall be included in the contract for the noncommissioned officers." CBA, Art. 20, ¶6 (Misc. Provisions); R.R. at 79a.

5

compensation and argues that Soberick cannot seek a forced amendment of that ordinance. In addition, it points out that the officers who are the direct beneficiaries of the CBA similarly have not realized the addition of overtime in the pension calculation because the bargained-for condition precedent has not occurred. Accordingly, it maintains that Soberick is receiving pension benefits under the pension ordinance in accordance with his expectation through his period of employment and, absent the occurrence of the condition precedent, has not suffered any harm through the alleged removal of a benefit to which he was entitled.

Soberick maintains that his standing to enforce the CBA means that the pension benefit applied to him and became part of his employment contract. Specifically, noting that the Borough agreed to both the "me-too" clause in his employment contract and the CBA overtime provision that it failed to adopt, he argues that, as of March 1, 2018, the date the CBA was in effect, the pension benefit was automatically provided to him.

Nonetheless, while we agree that the Borough was in breach of its contractual promise to amend the pension ordinance, and that Soberick has standing to enforce that provision of the CBA through the "me too" clause, this does not provide a basis upon which this Court can provide relief. As we discuss below, there is no basis for disturbing the arbitrator's award given the constraints of the applicable scope of review for common law arbitration.

## II. Scope of Review

Sections 7301 through 7320 of the Uniform Arbitration Act (UAA), 42 Pa.C.S. §§ 7301-7320, regulate statutory arbitration (Subchapter A), while Sections 7341 and 7342 of the Judicial Code, 42 Pa.C.S. §§ 7341, 7342, regulate common law arbitration (Subchapter B). Section 7302(a) of the UAA provides:

6

> (a) General rule.--An agreement to arbitrate a controversy on a nonjudicial basis shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to this subchapter or any other similar statute, in which case the arbitration shall be governed by this subchapter [A].

42 Pa.C.S. § 7302(a). Soberick's employment contract does not specifically provide that it is subject to arbitration under statutory arbitration (Subchapter A). Hence, it is subject to common law arbitration (Subchapter B).

The very limited scope of review for common law arbitration, codified in Section 7341 of the Judicial Code, provides:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa.C.S. § 7341. Judicial review of such arbitration is exceptionally narrow. *Borgia v. Prudential Ins. Co.*, 750 A.2d 843, 846 (Pa. 2000). Absent a clear showing that a party was denied a hearing or other irregularity, an arbitrator's award may not be vacated. *Azpell v. Old Republic Ins. Co.*, 584 A.2d 950, 952 (Pa. 1991). An irregularity may not be found merely upon a showing that an incorrect result was reached. *Press v. Maryland Cas. Co.*, 324 A.2d 403, 404 (Pa. Super. 1974). "It is well settled that a common law arbitration award is not reviewable on the basis of an error of law or fact." *Commonwealth v. Philip Morris USA, Inc.*, 114 A.3d 37, 35 (Pa. Cmwlth. 2015) (citation omitted).

Nonetheless, Soberick maintains that more expansive types of review are applicable citing the UAA's statutory arbitration provisions and the Public Employe Relations Act (PERA).[5]  However, the instant case invokes neither statutory arbitration under the UAA nor grievance arbitration under PERA.

Turning first to the UAA, Soberick cites 42 Pa.C.S. § 7302(d)(2), providing that a court review an arbitration award and modify or correct it "where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict [JNOV]," and 42 Pa.C.S. § 7314(a)(1)(iii), providing that a court may vacate an arbitration award where, *inter alia*, "the arbitrators exceeded their powers[.]"  He argues that a court always has jurisdiction to determine whether the arbitrator exceeded his powers and whether there was a deprivation of constitutional rights.

In pertinent part, 42 Pa.C.S. § 7302(d) provides:

(d) Special application.

(1) Paragraph (2) shall be applicable where:

. . . .

(ii) A political subdivision submits a controversy with an employee or a representative of employees to arbitration.

. . . .

(2) *Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a*

---

[5] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101-2301.  PERA is commonly referred to as Act 195.

8

> *verdict of a jury the court would have entered a different judgment or a [JNOV].*

42 Pa.C.S. § 7302(d) (emphasis added).

However, 42 Pa.C.S. § 7302(d)(2) applies only in two limited circumstances, neither of which is present here. The first occasion is when the agreement is made prior to the effective date of the UAA, December 4, 1980. Here, the employment contract is dated April 14, 2016. The second occasion is when the agreement expressly provides for arbitration pursuant to the former provisions relating to statutory arbitration. That also is not the case here. Accordingly, the UAA's JNOV standard is not invoked. *See Sherman v. Amica Mut. Ins. Co.*, 782 A.2d 1006, 1009 (Pa. Super. 2001) (analyzing the applicability of 42 Pa.C.S. § 7302(d)(2) pursuant to the provision's historical footnote).

As for 42 Pa.C.S. § 7314(a)(1)(iii), providing, *inter alia*, that a court may vacate an arbitration award where the arbitrator exceeded his powers, we reiterate that because Soberick's employment contract does not specifically provide that it is subject to arbitration under statutory arbitration (Subchapter A), it is subject to common law arbitration (Subchapter B) pursuant to 42 Pa.C.S. § 7302(a). Accordingly, 42 Pa.C.S. § 7314(a)(1)(iii) similarly does not apply.

As for PERA, Soberick maintains that the essence test,[6] which applies to grievance arbitration under PERA, could be applicable because courts have held

---

[6] Pursuant to the essence test, a court must afford great deference to the arbitrator's contract interpretation. *Neshaminy Sch. Dist. v. Neshaminy Fed'n of Teachers*, 171 A.3d 334 (Pa. Cmwlth. 2017). That interpretation may be set aside only where it is so indisputably contrary to the contract that it cannot rationally be derived from the agreement. Stated another way, the award should not be upheld where it indisputably and genuinely is without foundation in, or fails to logically flow from, the CBA. *Id.*

9

that the JNOV standard is the same as the essence test[7] and awards thereunder can be reviewed notwithstanding an agreement providing that the award is final and binding upon the parties.[8]  In addition, he argues that the arbitrator's award should not be enforced because it contravenes public policy.[9]

Soberick's arguments pertaining to PERA are without merit.  The essence test applicable to PERA arbitration does not apply to uniformed officers.  Rather, police officers are covered by the Policemen and Firemen Collective Bargaining Act (Act 111).[10]  *See Lower Swatara Twp. v. Pa. Labor Rels. Bd.*, 208 A.3d 521, 531 (Pa. Cmwlth. 2019) ("PERA's definition is clear; the term 'employe' specifically excludes police officers 'covered under [Act 111.]'").  While Act 111 would apply to the arbitration of disputes directly controlled by the CBA, the instant dispute asserts a right under Soberick's separate and non-union employment contract, albeit one which incorporates a provision of that CBA.  The right to arbitration in the employment contract incorporates a dispute resolution process culminating in common law arbitration subject to an agreed upon set of procedural rules published by the American Arbitration Association.  Notably, the employment contract provides that the arbitrator's award shall be final and binding.

Accordingly, notwithstanding the fact that the Borough's failure to amend its pension ordinance may constitute a breach of contract, we cannot lawfully

---

[7] *Philip Morris USA, Inc.*, 114 A.3d at 53.

[8] *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. & Univ. Pro. Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999).

[9] If the essence test is met, then the award can be vacated only if it satisfies the narrow public policy exception, which means that its enforcement would contravene a well-defined and dominant public policy. *Shamokin Area Sch. Dist. v. Am. Fed'n of State, Cnty., & Mun. Emps. Dist. Council 86*, 20 A.3d 579, 582 (Pa. Cmwlth. 2011).

[10] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.12.

disturb the arbitrator's award. The arbitrator's determinations that the Borough's inaction is an issue for the Borough and the FOP to resolve[11] and/or that Soberick did not have a breach of contract claim constitute legal errors outside of our very limited scope of review for common law arbitrations.[12]

### III. Constitutional Rights

Soberick argues that the denial of his grievance deprives him of his constitutional rights under Article I, Section 17 of the Pennsylvania Constitution, the *ex post facto* clause under which retirement benefits are viewed as deferred compensation for services provided in the past. *Fairview Twp. v. Fairview Twp. Police Ass'n*, 795 A.2d 463 (Pa. Cmwlth. 2002), *aff'd*, 839 A.2d 183 (Pa. 2003). He notes that pension benefits are viewed as contractual in nature and enjoy the protection of the *ex post facto* clause. *Catania v. State Emp. Ret. Bd.*, 450 A.2d 1342 (Pa. 1982). Accordingly, he asserts that because his retirement benefits became fixed upon his entry into the retirement system, they cannot be diminished or adversely affected after that entry. *Ass'n of State Coll. and Univ. Faculties v. State Sys. of Higher Educ.*, 479 A.2d 962 (Pa. 1984).

Although constitutional rights would come into play under Act 111, alleged deprivations of such rights are not within the scope of our review for common law arbitration. *See also Commonwealth v. Trainer*, 287 A.3d 960, 963 n.3 (Pa. Cmwlth. 2022) [citing *Ballou v. State Ethics Comm'n*, 436 A.2d 186 (Pa. 1981)] (where a case can be resolved on other grounds, an appellate court should not reach constitutional issues). Assuming arguendo that constitutional rights were before us,

---

[11] 7/10/2023 Arb. Award at 10; R.R. at 24a.

[12] It may be noted as well that even if incorporation of the pension provision of the CBA caused the instant arbitration to be reviewable under the standards of Act 111, those errors of law would not be within the scope of our review.

11

there was no violation of the *ex post facto* clause. The pension benefit awarded to Soberick is the same benefit that has been in place since 2008 and, therefore, there was no retroactive diminution of a benefit. Only when a contractual right becomes vested can it then be diminished. *Krivosh v. City of Sharon*, 395 A.2d 632, 634 (Pa. Cmwlth. 1978). Soberick's rights under the pension plan were not diminished. Instead, they were never *enhanced* as promised in the CBA. Accordingly, because a right becomes vested only when the conditions of eligibility have been satisfied[13] and the *ex post facto* clause applies only to legislative action that results in retrospective harm, the award did not result in a deprivation of Soberick's constitutional rights.[14]

## IV. Conclusion

It is unclear why the Borough failed to amend its pension ordinance to reflect the overtime provision. Its failure to do so is troubling and, evidently, constitutes a breach of contract. However, there is no basis for disturbing the arbitrator's award given the constraints of the applicable scope of review for common law arbitration. While we do not condone the Borough's failure to follow through on its agreement, this case presents an error of law that does not warrant disturbing the award. Accordingly, we must affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[13] *Mun. of Hermitage v. Hickory Twp. Fraternal Order of Police Lodge No. 82*, 492 A.2d 494 (Pa. Cmwlth. 1985).

[14] The Borough cites its failure to act in support of its argument that Soberick's right to the overtime upgrade did not vest. While the Borough's position wafts of bad faith, its apparent contract breach is not subject to our applicable review in this matter.

12

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jack Soberick, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 699 C.D. 2024 |
| | : | |
| Lansford Borough | : | |

## **O R D E R**

AND NOW, this 8th day of August, 2025, the order of the Court of Common Pleas of Carbon County is hereby AFFIRMED.

 

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita